UNITED STATES of America, Plaintiff,

v.

ONE 1974 CESSNA MODEL 310R AIR-CRAFT, SERIAL NO. 310R0203, FAA REGISTRATION NO. N5083J, Defendant.

Civ. A. No. 76–956.

United States District Court, D. South Carolina.

April 13, 1977.

Joel W. Collins, Jr., Asst. U. S. Atty., Columbia, S. C., for plaintiff.

Wilburn Brewer, Jr., Nexsen, Pruet, Jacobs & Pollard, Columbia, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

The government brings this action pursuant to 21 U.S.C. § 881 seeking the forfeiture of the defendant Cessna aircraft for allegedly having been used for the transportation of marijuana in violation of federal law. Defendant Yingling Aircraft, Inc., a corporation with its principal place of business in Kansas, intervened in this matter and moved to dismiss for lack of jurisdiction, and/or transfer the cause to the United States District Court for the District of Kansas. The motion forges issues for this court.

The pertinent facts are that on September 29, 1975, Yingling filed an action in the District Court of Sedgwick County, Kansas, wherein it sought to recover money damages from Trans-Island Survey & Photo Co., Ltd. (hereinafter Trans-Island). On the same day, Yingling obtained and served an Order of Attachment attaching the Cessna aircraft defendant in this action, which was in possession of Yingling at the time. On May 20, 1976, a default judgment was entered by the District Court of Sedgwick County, Kansas, awarding Yingling damages in the amount of $47,427.97, plus interest and costs, and ordering that the Cessna 310 be sold in satisfaction thereof.

On or about March 19, 1976, defendant aircraft, which had earlier been attached by Yingling, was seized in Wichita, Kansas, by agents of the Drug Enforcement Administration of the United States Department of Justice for allegedly having been used by Trans-Island for the transportation of marijuana in violation of federal law. On May 28, 1976, the United States Attorney for the District of South Carolina filed the present action seeking judgment of forfeiture against the Cessna.

On June 7, 1976, Yingling filed its complaint for declaratory judgment and injunctive relief in the United States District Court for the District of Kansas, in Wichita, whereby Yingling sought to enjoin the United States, the Attorney General, and the Administrator of the Drug Enforcement Administration of the United States Department of Justice from removing the Cessna aircraft from the State of Kansas, or otherwise interfering with the lawful sale of same pursuant to the order of judgment of the District Court of Sedgwick County, Kansas. In the alternative, Yingling sought a declaratory judgment affirming its interest in the Cessna 310 and declaring that Yingling has a first and prior lien in said aircraft by reason of the state court judgment, and ordering that any sale or other disposition of same by the United States is subject to Yingling's interest thereon. By agreement of the parties as reflected in the order of the Honorable Frank G. Theis, United States District Judge for the District of Kansas, the Cessna aircraft was removed from the custody of Yingling and moved to a neutral location at United Beechcraft, Inc., at Wichita Mid-Continent Airport, Wichita, Kansas, where it is being held until further order of the court.

On June 18, 1976, a trial was held in Wichita, Kansas, before the Honorable Frank G. Theis, United States District Judge, on the issues raised by Yingling's complaint for declaratory judgment and injunctive relief. Following the trial, Judge Theis took the matter under advisement, indicating that he would reserve judgment on the question of whether the United States District Court for the District of South Carolina has jurisdiction over the Cessna aircraft in order to permit the South Carolina court to decide the question of its own jurisdiction. The parties thereupon agreed that the subject aircraft would remain within the District of Kansas pending this court's determination of the jurisdictional question.

It is undisputed that the Cessna aircraft has not been in South Carolina at any time since the forfeiture action was commenced by the government. It is also undisputed that the seizure of the aircraft took place in Kansas.

The government contends that the District Court for the District of South Carolina has jurisdiction in this matter under 28 U.S.C. § 1355 and 28 U.S.C. § 1395. Section 1355 reads:

> The district court shall have original jurisdiction, exclusive of the courts of the states, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any act of Congress.

This section represents a general grant of subject matter jurisdiction to federal district courts in forfeiture actions. Section 1395 controls venue in actions for fines, penalties or forfeitures. That section reads, in pertinent part:

> (a) A civil proceeding for the recovery of a pecuniary fine, penalty or forfeiture

may be prosecuted in the district where it accrues or the defendant is found.

(b) A civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found.

(c) A civil proceeding for the forfeiture of property seized outside any judicial district may be prosecuted in any district into which the property is brought.

The government argues that this court has jurisdiction in that the forfeiture *accrued* in South Carolina because the aircraft initially landed in South Carolina when and where it was allegedly used in smuggling activities and that the forfeiture relates back to the alleged illegal act. For this reason, the government insists that Section 1395(a) allows the action to be brought in South Carolina as the place of its accrual. Government attorneys further position that under 21 U.S.C. § 881(c)(2)[1], the Attorney General, in seizure cases, has the power to "remove the property to a place designated by him". The government contends that this provision coupled with § 1395(c) allows the Attorney General to remove the property from Kansas to South Carolina and thus bestow jurisdiction on the South Carolina District Court. Under this same line of reasoning, the government argues that the Attorney General may remove the aircraft to South Carolina and acquire jurisdiction under § 1395(b) which provides that an action may be brought in the district where the property is found. Defendant-intervenor, Yingling, argues that the property must be within the district before the court has *in rem* jurisdiction over it. Yingling's position, quite simply stated, is that § 1395 is a venue statute (a proposition with which this court completely agrees) and that jurisdiction is unaffected by such section. Yingling asserts that the district court has no inherent power to exercise traditional *in rem* jurisdiction beyond the territorial borders of the district.

The question presented here is quite simple: What are the territorial limits of the United States District Courts jurisdiction in *in rem* proceedings involving forfeitures under ?1 U.S.C. § 881? As usual, the answer is not as simple as the question. This section, unlike many other code sections involving forfeitures, relies totally on 28 U.S.C. § 1355 for a general grant of jurisdiction to the district courts. Yingling cites *Fettig Canning Co. v. Steckler*, 188 F.2d 715 (7th Cir. 1951), for the proposition that, "the court having jurisdiction is the court in whose district the *res* is found." The *Fettig* case, however, is totally inapplicable in that it involved a seizure of adulterated or misbranded food pursuant to 21 U.S.C. § 334(a) which provides, "any article of food . . . that is adulterated or misbranded when introduced into or while in interstate commerce . . . shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on reliable information and condemned in any district court of the United States within the jurisdiction of which the article is found." It is plain from this language that the statute itself, which created jurisdiction over the action in the district court, limited the territorial jurisdiction of the courts in such actions to the district in which the *res* is found. The same differentiation applies to the cited case of *United States v. Eleven Cases*, D.C., 94 F.Supp. 925 (1950), which was also brought under 21 U.S.C. § 334(a).

 Where most federal jurisdiction questions refer to *subject matter* jurisdiction, this case is involved with the *territorial* jurisdiction of the United States District Court in *in rem* proceedings. Jurisdiction of the federal district courts, both territorial and subject matter, are, of course, regulated by the Constitution and by relevant statutes. Although the constitutional due process limitations of *in personam* jurisdiction have been outlined in *International*

---

1. 21 U.S.C. § 881(c)(2) provides:

(c) Property taken or detained under this section shall not be replevied, but shall be deemed to be in the custody of the Attorney General, subject only to the orders and decrees of the court or the official having jurisdiction thereof. Whenever property is seized under the provisions of this subchapter, the Attorney General may—

. . . . .

(2) remove the property to a place designated by him . . . . .

*Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny there have been no similar line of cases discussing any inherent constitutional limitations of a federal district court *in rem* proceedings. While defendant-intervenor argues that physical presence of the *res* within the district is a prerequisite for *in rem* jurisdiction of a federal district court, the doctrine of physical presence has no more inherent viability in the case of *in rem* jurisdiction than it did in the case of *in personam* jurisdiction in *International Shoe*. This court is of the opinion that once a valid statutory ground of subject matter jurisdiction is conferred upon the United States District Courts in such matters, there is no such inherent limitation on the power of the court to dispose of the matter. The common law principle that *in rem* jurisdiction may only be exercised when the *res* is before the court need not be disputed, but it must be recognized that it is Congress and not tradition, which decides whether "before the court" means within the district or within the nation. In absence of congressional intent to the contrary, the territorial jurisdiction of United States Court in a forfeiture proceeding under 28 U.S.C. § 1355 is limited only by the territorial limits of the nation and the venue provisions of 28 U.S.C. § 1395. While this court is acutely aware of the normal distinctions between jurisdiction and venue, in this particular instance, the venue statute controls *territorial* jurisdiction in that it represents an effective statutory limitation on the district courts power to hear the matter in hand. In this very limited sense of the word, the venue statute contained in § 1395 is jurisdictional in nature, in that, in *in rem* proceedings under § 1355, it and it alone determines where a forfeiture of proceeding may be properly brought.

In referring to 28 U.S.C. § 1395 it becomes evident that only subsection (b) applies in the present case. Subsection (a) has historically been used in *in personam* actions for fines, penalties or forfeitures. *See, e. g.,* 1 J. Moore, Federal Practice ¶ 0.144(3) at 1483 (2d Ed., 1953); *United States v. Craig,* 28 F. 795 (CC E.D. Mich. 1886). On the other hand, this action cannot be properly brought in South Carolina under subsection (c) because that subsection properly applies procedures made outside the territorial limits of the United States, such as a seizure on the high seas. The wording of the provision plainly says, "outside *any* district". The seizure in the present case was clearly within a district of the United States Court system (i. e. Kansas) and therefore this provision is inapplicable.

The government also argues that 21 U.S.C. § 881(c)(2) gives the Attorney General the power to move the aircraft to South Carolina. It contends that, after moving the aircraft to South Carolina, the action will be proper under 28 U.S.C. § 1395(b) because the property will be "found" in the district of South Carolina. The discretion of the Attorney General under § 881(c)(2) is not unfettered. 21 U.S.C. § 881(d)[2] provides that all seizures and forfeitures under that title will be carried out with reference to and in accordance with the applicable provisions of the customs laws. The customs provision directly relating to 21 U.S.C. 881(c)(2) is 19 U.S.C. § 1605, which reads, in pertinent part:

2. 21 U.S.C. § 881(d) provides: Other laws and proceedings applicable

All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, except to the extent that such duties arise from seizures and forfeitures effected by any customs officer.

. . . Pending such disposition, the property shall be stored in such place as, in the customs officer's opinion, is most convenient and appropriate with due regard to the expense involved, whether or not the place of storage is within the judicial district or the customs collection district in which the property was seized; *and storage of the property outside the judicial district or customs collection district in which it was seized shall in no way affect the jurisdiction of the court which would otherwise have jurisdiction over such property.*

By interpreting 21 U.S.C. § 881(c)(2) in light of its customs law counterpart, it becomes apparent that the provision was developed as an enabling statute to allow the Attorney General to take charge of seized property and remove it to a place of convenience and protection. It is unreasonable to assume that there was any intent on the part of Congress to confer upon the Attorney General the ability to bring his action for forfeiture in the district of his choice merely by transferring the property to that district. It follows that, where the Attorney General may take whatever necessary steps to insure the security of the property involved, he may not create or defeat jurisdiction of the district court by his actions.

■ Therefore, having found that the provisions of 28 U.S.C. § 1395(b) are applicable in the case and that 21 U.S.C. § 881(b) does not grant the Attorney General the power to affect jurisdiction or venue by transporting seized property, it is the opinion of this court that the action was properly brought originally in Kansas. Therefore, the defendant-intervenor's motion to dismiss is denied and their motion to transfer is granted.

AND IT IS SO ORDERED.