UNITED STATES of America, Plaintiff,

v.

PREMISES KNOWN AS LOTS 50 & 51, 2050 BRICKELL AVENUE, MIAMI, FLORIDA, etc., et al., Defendants.

No. 87–753–CIV–5.

United States District Court,
E.D. North Carolina,
Raleigh Division.

March 1, 1988.

---

Stephen A. West, Asst. U.S. Atty., Raleigh, N.C., for plaintiff.

Gordon Widenhouse, Purser, Cheshire, Parker, Hughes & Dodd, Raleigh, N.C., for defendants.

## ORDER

BRITT, Chief Judge.

This matter is before the court on claimants' motions to dismiss pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure. Delia and Dario Londono (hereinafter claimants) argue that this court lacks personal jurisdiction over the defendant *res* and, alternatively, that service of process by plaintiff was defective because the *res* is outside this court's jurisdiction. The issues have been fully briefed, and the matter is now ripe for disposition.

## FACTS

The United States of America brought this action seeking the civil forfeiture of certain real property located in the Southern District of Florida pursuant to Title 21, United States Code, Section 881(a)(7). On or about 12 October 1987 claimants filed claims to defendant property pursuant to Supplemental Rule for Certain Admiralty and Maritime Claims, C(6).

The amended complaint alleges that the defendant premises were "used or intended to be used to facilitate the commission of a violation of the Controlled Substances Act ... in that Dario and Delia Londono would and did knowingly or intentionally use communication facilities, including ... equipment located in and on [defendant premises] to commit or facilitate the commission of an act or acts constituting felonies under the Controlled Substances Act," specifically, a conspiracy to unlawfully import into the United States a Schedule II controlled substance, to wit: cocaine, in excess of one kilogram, in violation of 21 U.S.C. §§ 960 & 963 and 21 U.S.C. § 843(b). An indictment filed in the Eastern District of North Carolina on 27 March 1987 charged Dario Londono with criminal acts involving the defendant property and arguably formed the basis of this civil forfeiture action. Dario Londono pled guilty to counts one and eight of the superseding indictment. Count one charged him with conspiracy to unlawfully import cocaine, and one of the overt acts alleged that a meeting took place in July 1985 in Miami, Florida, at the defendant premises. Delia Londono, who is alleged to have had knowledge, was a consenting party to the use of the defendant premises to facilitate the illegal conspiracy.

Plaintiff alleges that jurisdiction is predicated upon 28 U.S.C. §§ 1345 and 1355 and

that venue is proper under 21 U.S.C. § 881(j).

## DISCUSSION

Claimants' motion to dismiss for lack of jurisdiction over the defendant *res* requires that the court consider the extent of its *in rem* jurisdiction in light of the recently enacted venue provision of 21 U.S.C. § 881. Under subsection (j) proper venue for a forfeiture proceeding has been greatly expanded. Specifically, 21 U.S.C. § 881(j) provides that in addition to venue already provided for in 28 U.S.C. § 1395, etc., a "proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property is found or in the judicial district in which the criminal prosecution is brought."

The principal question before the court is: What are the territorial limits of a United States district court's jurisdiction in *in rem* proceedings involving forfeitures under 21 U.S.C. § 881? This question was presented to another district court in *United States v. One 1974 Cessna Model 310R Aircraft*, 432 F.Supp. 364 (D.S.C.1977); however, that was prior to the enactment of 881(j) and did not involve real property. As noted by that court, the question is simple; the constitutional issues it raises are not.

The exercise of jurisdiction is a function of several things, including physical and political power. It is limited by principles of fairness which have been defined as reasonable notice and some relationship to the forum exercising power. These principles are embodied in the due process clause. *See Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In addition to constitutional limitations, Congress may also specify when jurisdiction may be exercised. The court is well aware of the general propriety of congressional control of federal court jurisdiction. *See Sheldon v. Sill*, 8 How. 441, 12 L.Ed. 1147 (1850). The exercise of that control, however, is subject to constitutional scrutiny. *See Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803). Accordingly, the court will examine this statute in light of general principles governing federal court territorial jurisdiction and minimum requirements under the Fifth Amendment of the Constitution.

The historical concept of territorial jurisdiction was largely parochial. "[T]he territorial jurisdiction of courts was based upon the presence of a person or thing within the legal boundaries of the government that created the court. *Pennoyer v. Neff*, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1877)." Restatement of Law 2d Judgments, 1982 Ed., ch. 2, Validity of Judgments, Introductory Note, p.22. This narrow view has been largely discredited and current law utilizes a "minimum contacts" analysis rather than a strictly geographical one. *See Shaffer v. Heitner, supra; cf. Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *but see* Restatement of Law 2d Judgments, § 4 "Constitutional and Legislative Determinants of Territorial Jurisdiction", p. 60 (1982 Ed.). In fact, there is authority for the proposition that because the United States is exercising its judicial power, it "need not demonstrate the minimum contacts with the forum state required by *International Shoe.*" *United States v. Irvine & Associates, Inc.*, 645 F.Supp. 845, 848 (E.D.Va.1986), *citing Gilbert v. Bagley*, 492 F.Supp. 714, 746–747 (M.D.N.C.1980).[1]

As previously noted, this statute enables the government to seize property used or intended to be used in connection with a violation of the Controlled Substances Act. "[A] primary goal of this forfeiture statute is to cripple illegal drug trafficking and

---

1. *See also Hogue v. Milodon Engineering, Inc.*, 736 F.2d 989, 991 (4th Cir.1984). "The propriety of process issuing from federal courts sitting in cases arising under federal law is not tested by the same yardstick as is the constitutional limitation upon service of process issuing from state courts because the issues involved necessarily are often national in character. [Citations omitted.] Rather, the defendant must look primarily to federal venue requirements for protection from onerous litigation."

narcotics activity." *United States v. One 1972 Datsun Vehicle ID No. LB1100355950*, 378 F.Supp. 1200, 1205 (D.N.H.1974); *see also* House Report as set forth in 1950 U.S. Code Cong. Serv., pp. 2953–2954.

The operation of 21 U.S.C. § 881, if it is to effect congressional intent and fulfill its primary goal, must be flexible and extensive. With the expansion of drug trafficking in the United States and the not unlimited government resources available to combat it, Congress saw the necessity of amending 21 U.S.C. § 881 to facilitate the effective operation of the statute. It did so by expanding venue.

This expansion was not without regard for the constitutional rights of potential defendant-claimants. Indeed, the legislative history notes that "[w]hile this amendment would depart with tradition, it should not be viewed as unconstitutional since it is likely not only to provide a more convenient forum for both the government and the defendant-claimant, but also better notice to the defendant-claimant." 130 Cong. Rec. S267 (daily ed. Jan. 26, 1984).

■ The new venue provision as structured reflects the relationship between the property sought and the district court where the forfeiture proceeding is brought. Title 21, United States Code, Section 881(j) provides that a forfeiture proceeding may be brought where a defendant-claimant is found. This does not present great constitutional difficulty. Even though this is an *in rem* proceeding, the "judicial jurisdiction over a thing" is a "customary elliptical way of referring to jurisdiction over the *interests of persons* in a thing." Restatement 2d Conflict of Laws § 56, Introductory Note, p. 192 (1971 Ed.) (emphasis added). Focusing solely on the location of the property ignores both the purpose of forfeiture proceedings and the real interests at stake, those of the person, not the property.

Title 21, United States Code, Section 881(j) also provides that a forfeiture proceeding may be brought where the criminal prosecution is brought. This provision also presents no constitutional problem. The fact of criminal prosecution in a certain district indicates that an act in violation of the Controlled Substances Act occurred there and, therefore, anyone involved in the criminal act should reasonably expect to be subject to the exercise of jurisdiction in that district. This should extend to unindicted co-conspirators since their participation in an illegal drug enterprise extending beyond a given border reasonably subjects them to jurisdiction in a district where further illegal activities take place.

The relationship between the defendant-claimant and the forum under either provision is a reasonable one within the meaning of the due process clause. *See Hanson v. Denckla, supra.*

The fact that the property is real property is of no moment when the jurisdiction exercised is that of the federal sovereign. *Cf. Keene v. United States*, 5 Cranch 304, 3 L.Ed. 108 (1809) ("It is well settled that a proceeding *in rem* against specific property is local in character and must be brought where the property is subject to seizure under process of the court.") Parochial concerns and distinctions between local and transitory actions have no particular relevance in the context of forfeiture proceedings under this statute. As noted by the court in *Cessna:*

> [T]he doctrine of physical presence has no more inherent viability in the case of *in rem* jurisdiction than it did in the case of *in personam* jurisdiction in *International Shoe....* The common law principle that *in rem* jurisdiction may only be exercised when the *res* is before the court need not be disputed, but it must be recognized that it is Congress and not tradition, which decides whether 'before the court' means within the district or within the nation.

432 F.Supp. at 368.

Claimants argue that nonmovable property could never have sufficient contacts with this forum to justify the assertion of jurisdiction over it. This argument is without merit. The application of their "minimum contacts" analysis to the property is

inherently illogical.[2] Indeed, unlike an automobile or an aircraft, the premises in Florida did not directly play a role in the violation of the Controlled Substances Act in North Carolina. However, the Florida property was indirectly connected with the criminal acts here; and, more importantly, there is a relationship between the property, the claimants, and the forum.

The court can find no constitutional limitation on the territorial jurisdiction of federal courts in *in rem* proceedings other than minimum requirements of notice and reasonableness and, therefore, agrees that "[i]n [the] absence of congressional intent to the contrary, the territorial jurisdiction of [a] United States Court in a forfeiture proceeding under 28 U.S.C. § 1355 is limited only by the territorial limits of the nation...." *Cessna,* 432 F.Supp. at 368.

Claimants have also moved to dismiss this action pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. They argue that plaintiff's failure to follow E(3)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims renders service in this action defective. Rule E(3)(a) provides that "process *in rem* and of maritime attachment and garnishment shall only be served within the district." Claimants argue that this provision means that service of process is defective if the *res* is outside the court's jurisdiction. Alternatively, claimants apparently argue that to the extent that this court has jurisdiction over the defendant *res* then service of process outside the Eastern District of North Carolina is defective under Rule E(3)(a).

Plaintiff argues that 881(j) displaces the supplemental admiralty rules and that nationwide service should be implied from the language of the statute and its legislative history.

Title 21, United States Code, Section 881(b) provides that the supplementary admiralty rules may apply to actions brought under that statute. When Congress added subsection (j) they did not explicitly amend

or alter subsection (b). The question then is whether this omission is significant or simply incomplete drafting.

Plaintiff fervently argues that subsection (j) should be read broadly, else its enactment would be rendered superfluous or useless. The court agrees. *See Dept. of Defense, Army Air Force Exchange Service v. Federal Labor Relations Authority,* 659 F.2d 1140, 1160 (D.C.Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982) (A statute should be read in a "manner which effectuates rather than frustrates the major purpose of the legislative draftsmen."); *South Corp. v. United States,* 690 F.2d 1368, 1374 (Fed. Cir.1982) (A statutory construction which would impermissibly impute a useless act to Congress must be viewed as unsound and rejected.).

Since process is necessary to perfect statutory jurisdiction, if subsection (j) was indeed intended to expand not only venue but the jurisdiction of federal courts in forfeiture actions, then how did Congress intend process to be effected, i.e., did it intend that the reach of process would coextend with this expanded venue or did it simply fail to consider the impact of then current limitations on the reach of process in forfeiture *in rem* actions?

Since "express statutory language is not an absolute *sine qua non* for finding nationwide service of process," *Violet v. Picillo,* 613 F.Supp. 1563, 1570 (D.R.I.1985), the court may imply such authorization from the language provided, the legislative history of the statute, and general maxims of statutory construction previously noted.

The only significant commentary within the legislative history of subsection (j) discusses the burden on the government of bringing civil forfeiture actions in multiple districts when confronted with a widespread drug enterprise. It is clear that Congress intended to expand the tools necessary to combat drug trafficking and distribution in the United States.

---

**2.** As previously noted, the minimum contacts analysis is not necessarily applicable where the

United States is exercising its judicial power.

An instructive analysis is found in *Limerick v. T.F. Scholes, Inc.*, 292 F.2d 195 (10th Cir.1961). *Limerick* dealt with a statutory restriction on the place of suit under the Miller Act (40 U.S.C. § 270b). The court addressed the issue of service of process beyond the territorial limits of the state where a district court sits. It noted that:

> [A] statutory restriction on place of suit ha[d] the effect of displacing the provision on territorial limitation of service ... and 'amply authorize[d] the ... Court in the district wherein the action is required to be brought to obtain jurisdiction of the persons of the defendants through the service upon them of its process in whatever district they may be found.'

*Limerick*, 292 F.2d at 196, *quoting United States v. Congress Construction Co.*, 222 U.S. 199 at 203–204, 32 S.Ct. 44, 46, 56 L.Ed. 163 (1911) (dealt with the Heard Act, predecessor to the Miller Act, statutory limitation nearly identical).

The strict limitation on venue at issue in *Limerick* and *United States v. Congress Construction Co.* is not dispositive. *Contra Violet v. Picillo*, 613 F.Supp. at 1570 (drawing a distinction based on the fact that "failure to imply authority for extraterritorial process would deprive *any* federal court of the power to adjudicate cases under the statute"). What is important is that both courts were especially concerned with the nature of the statute, effectuating congressional intent, and promoting the purposes of the act. In fact, one court clearly noted that the "practical operation of the ... act *require[d]* service beyond the territorial limits of the state." *Limerick*, 292 F.2d at 196 (emphasis added).

■ The failure of Congress to expressly provide for nationwide service of process in forfeiture proceedings brought pursuant to 21 U.S.C. § 881 should not serve to completely frustrate the purpose of enacting subsection (j) or, in many cases, completely prevent its operation. Therefore, the court holds that nationwide service of process is authorized.

Accordingly, claimants' motions to dismiss for lack of jurisdiction and defective service of process are hereby denied.