**UNITED STATES of America, Plaintiff,**

v.

**$358,613.00, UNITED STATES CURRENCY, Defendant.**

**No. C–C–88–35–P.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

Jan. 12, 1989.

---

Charles E. Lyons, Asst. U.S. Atty., Charlotte, N.C., for plaintiff.

Harold J. Bender, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on (1) Plaintiff's Motion for Change of Venue, filed September 28, 1988, and (2) "Defendant's" Motion to Dismiss, filed October 12, 1988, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.[1]

This is an action in rem brought by the United States government ("the Government"), pursuant to Section 881 of Title 21, United States Code, against three hundred fifty-eight thousand, six hundred thirteen dollars ($358,613.00) in United States currency. On January 22, 1988, the Government filed its Complaint for Forfeiture In Rem. In the Complaint, the Government alleges that two batches of seized currency—which total $358,613.00—are proceeds traceable to exchanges for controlled substances or were intended to be used to facilitate exchanges of controlled substances.

The first batch of currency—equaling $16,062.00—was seized on March 30, 1987 when Vice Officers of the Charlotte Police Department executed a search warrant on the Charlotte, North Carolina, residence of Carroll Lee Morrow ("Morrow"). Along with the currency, (1) three hundred and forty-eight dollars ($348.00) in United States Department of Agriculture food stamps, (2) precision weight scales, and (3) certain controlled substances, including 6.49 grams of cocaine, 334 dosage units of amytal sodium, and 150 dosage units of Percodan II, were allegedly discovered and seized.

The second batch of currency—equaling $342,551.00—was seized on April 9, 1987 when a warrant for Morrow's arrest was executed; Morrow was arrested while he was staying in Room 313 of the Heritage Lodge—formerly the Econo Lodge—in Fort Mill, South Carolina. Along with this second batch of currency, (1) drug paraphernalia and (2) more controlled substances, including 14.68 grams of cocaine,

---

1. As the Government has pointed out in its response, the Motion to Dismiss appears, on its face, to have been filed by the Defendant, but counsel for Claimant Carroll Lee Morrow signed it. Obviously it is Claimant Morrow who is seeking a dismissal of this action.

40½ tablets of dialudid, 30 capsules of amobarbital, 3 capsules and 1 tablet of codeine, and 22 tablets of valium, allegedly were discovered and seized.

On July 6, 1987, a five count superseding indictment was filed in this District charging Morrow with various offenses, including possession of cocaine, oxycodene (Percodan), and Amobarbital with intent to distribute in violation of Section 841(a)(1) of Title 21, United States Code.[2] The superseding indictment only charged Morrow with offenses related to the search of his Charlotte, North Carolina, residence; Morrow could not be, and was not, prosecuted in this District for offenses related to the South Carolina search and seizure. After a jury trial conducted in Statesville, North Carolina, the undersigned presiding, Morrow was convicted of simple possession of cocaine—a lesser included offense—and was sentenced to a one-year term of imprisonment.

On January 22, 1988—the day the Government's forfeiture Complaint was filed—United States Magistrate Barbara H. DeLaney issued a warrant for arrest in rem of the Defendant currency. On February 2, 1988, the United States Marshal filed a process receipt and return indicating that the Defendant currency is now in the custody of the United States Marshal pending disposition of this case.[3]

On February 11, 1988, Morrow filed a claim asserting his property rights in the Defendant currency and demanding its return. On March 15, 1988, Morrow timely filed an answer to the Government's Complaint. Morrow has specifically denied many of the Government's allegations, and he has also raised eight affirmative defenses, including an assertion that this Court lacks subject-matter jurisdiction over the second batch of currency because it was seized in South Carolina.[4]

On September 28, 1988, the Government filed a Motion for Change of Venue seeking to transfer this case to the District of South Carolina, pursuant to Sections 1404 and 1406 of Title 28, United States Code. In support of its motion, the Government notes that it is at least arguable that Section 1395(b) of Title 28, United States Code, requires forfeiture actions to be prosecuted in the district where the property is first found or seized. 28 U.S.C.A. § 1395(b) (West 1976); *see United States v. One 1974 Cessna Model 310R Aircraft,* 432 F.Supp. 364 (D.S.C.1977) (if property is seized outside of *any* district, then pursuant to § 1395(c) the forfeiture proceeding may be held in any district into which the property is brought, but § 1395(c) does not apply to seizures occurring within a district); *cf. United States v. One(1) Caribou Aircraft Reg. No. N–1017–H,* 557 F.Supp. 379 (D.P.R.1983). Therefore, the Government urges this Court to transfer this action to the

2. Morrow was originally indicted and arrested only for violating Section 2024(b)(1) of Title 7, United States Code (unlawful possession of food stamps). The superseding indictment included the food stamps charge and the controlled substances charges. None of the charges in superseding indictment arose from the South Carolina search and seizure.

3. In paragraph two of the Government's Complaint, the Government alleges that the Defendant currency will be within the "jurisdiction" of this Court—presumably meaning within the territorial boundaries of this District—during the pendency of this action. The United States Marshal's office has informed this Court's personnel, however, that the currency has been moved out of this District and into a bank account used to collect seized currency. Claimant Morrow in his Answer specifically denied that the Defendant currency was going to remain in this District during the pendency of this action, and it

appears he may have been right. As will be explained *infra,* while it is arguable that the removal of the Defendant currency from this District defeated this Court's in rem jurisdiction, *see United States v. One Lear Jet Aircraft, Serial No. 35A–280,* 836 F.2d 1571 (11th Cir.1988), this apparent jurisdictional defect does not prevent this Court from entering an order, pursuant to 28 U.S.C.A. § 1406(a) (West 1976), transferring this action to the District of South Carolina.

4. There appears to be a typographical error in Morrow's Answer; he asserts in his Eighth Further Answer and Affirmative Defense that the second batch of currency was seized in York County, *Rock Hill,* South Carolina, and yet elsewhere in his Answer he admits that the funds were recovered in *Fort Mill,* South Carolina. The Government has also referred exclusively to Fort Mill, South Carolina, as the place where the second batch of currency was recovered.

District of South Carolina, where the second batch of currency was seized, to avoid any future disputes on the issue of where this action should be properly prosecuted.

The Government has stipulated that the first batch of currency—the $16,062.00 seized in Charlotte, North Carolina—will constitute that much of the twenty thousand dollars ($20,000.00) paid to attorney Edward T. Hinson, Jr., who agreed to represent Morrow in *United States v. Morrow*, C–CR–87–37 (Morrow's criminal case in this District on the superseding indictment).[5] The Government has also represented to this Court that it will not seek to recover the monies paid to Hinson. Thus, it appears that the Government will not need to present any evidence concerning the first batch of currency—the $16,062.00 —since that money is not in controversy any longer.

This Court is of the opinion that the Government's stipulation concerning the first batch of currency removes one barrier preventing this Court from transferring this action to South Carolina. The first batch of currency was found in this District, and, therefore, any forfeiture prosecution relating to that first batch would necessarily have to be conducted in this District, pursuant to Section 1395(b). The Government has indicated, however, that it will not be seeking forfeiture of the first batch of currency, which has been already paid to Hinson as compensation for his professional services. Therefore, this Court holds that Section 1395(b) does not require the Government to prosecute in this District what effectively remains in controversy—the second batch of currency, which was seized in South Carolina. On the contrary, it appears that Section 1395(b) requires the Government to prosecute in the District of South Carolina its forfeiture action against the second batch of currency. *United States v. One 1974 Cessna Model 310R Aircraft*, 432 F.Supp. at 367–369.

**5.** The money was paid to Hinson in accordance with a order entered by Magistrate DeLaney on

Claimant Morrow in his Motion to Dismiss, filed October 12, 1988, argues that Section 1395(b) not only requires the Government to prosecute in the District of South Carolina its forfeiture action against the second batch of currency. Morrow contends that Section 1395(b) also limits the subject-matter jurisdiction of the district courts in forfeiture proceedings; Morrow concludes that this Court has no subject-matter jurisdiction over the case and, therefore, cannot transfer anything to the District of South Carolina because "there is nothing to transfer."

The Government has cited in its Complaint numerous statutory sections as the basis for this Court's jurisdiction over this action, including Sections 1345, 1355, and 1356 of Title 28, United States Code. This Court is of the opinion that any one of these sections is sufficient to provide this Court with subject-matter jurisdiction over a forfeiture action. Section 1355 explicitly grants to the district courts original jurisdiction over any action or proceeding for forfeiture under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under Section 1582 of Title 28, United States Code. 28 U.S.C.A. § 1355 (West Supp.1988). Therefore, this Court finds Claimant's Morrow argument on subject-matter jurisdiction to be without merit.

In *United States v. One 1974 Cessna Model 310R Aircraft*, 432 F.Supp. 364 (D.S. C.1977), the court entertained and granted a motion for transfer in a civil forfeiture case similar to the case before this Court. In *Cessna*, agents of the Drug Enforcement Administration seized the defendant aircraft in Kansas because it was allegedly used for transportation of marijuana in violation of federal law. *Id.* at 366. Subsequent to the seizure, the United States Attorney for the District of South Carolina filed in the District of South Carolina a forfeiture action against plane. The *Cessna* court was called upon to determine whether § 1395(b) limits the jurisdiction of the district courts in forfeiture actions, and

November 23, 1987.

it held that Kansas was the proper district for the prosecution of the forfeiture action; the *Cessna* court denied a defendant-intervenor's motion to dismiss and granted its motion to transfer. *Id.* at 369. The *Cessna* court's rulings demonstrate that it implicitly recognized that it had subject-matter jurisdiction over the case and could, therefore, enter a valid order transferring the forfeiture action to Kansas—the district identified by Section 1395(b) as the proper district for the forfeiture prosecution. This Court agrees with the *Cessna* court and is of the opinion that it has sufficient jurisdiction to enable it to transfer this case to the District of South Carolina, pursuant to Section 1406 of Title 28, United States Code, if such transfer is appropriate.

This Court will grant the Government's motion for transfer (1) because Section 1395(b) requires the Government to prosecute in the District of South Carolina its forfeiture action against the second batch of currency and (2) because it appears that such transfer is necessary to best serve the interests of justice, 28 U.S.C.A. § 1406(a) (West 1976) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss ... or[,] if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). An outright dismissal of this action at this time conceivably could result in the Government permanently, and improperly, losing control over the Defendant currency; both the Government and Claimant Morrow are entitled to have a court of competent jurisdiction finally and properly adjudicate this action and, thereby, determine their rights in the Defendant currency.

NOW, THEREFORE, IT IS ORDERED that Plaintiff's Motion for Change of Venue, filed September 28, 1988, is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss, filed October 12, 1988, is DENIED.

IT IS FURTHER ORDERED that *United States v. $358,613.00*, C–C–88–35–P, SHALL BE TRANSFERRED to the United States District Court for the District of South Carolina.