UNITED STATES of America, Plaintiff,

v.

$633,021.67 IN UNITED STATES CURRENCY; Assorted Computers; 10,131 Cable Converter Boxes, Defendants.

In re M.D. ELECTRONICS, Claimant.

In re G & A DISTRIBUTING, Claimant.

In re Gene ABBOUD, Claimant.

In re M & D ELECTRONICS, Claimant.

In re Joe ABBOUD, Claimant.

No. 1:93–cv–1054–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 14, 1993.

Dahil Dueno Goss, Office of U.S. Atty., Atlanta, GA, for plaintiff.

Gregory R. Crochet, Kutak Rock, Atlanta, GA, James Martin Mavis, F. Joseph Warin, Kutak Rock, Omaha, NE, for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the Court on Claimant Gene Abboud's Motion for Change of Venue [17] and Motion to Dismiss [18]; Claimant G & A Distributing's Motion to Dismiss [20] and Motion for Change of Venue [21]; Claimant M & D Electronics' Motion to Dismiss or, in the alternative, to Transfer [23]; and Plaintiff's Motion to Strike [27]. The Court DENIES Claimant Gene Abboud's Motion for Change of Venue, DENIES Claimant Gene Abboud's Motion to Dismiss, DENIES

Claimant G & A Distributing's Motion to Dismiss, DENIES Claimant G & A Distributing's Motion for Change of Venue, DENIES Claimant M & D Electronics' Motion to Dismiss, and DENIES Claimant M & D Electronics' alternative Motion to Transfer. The Court also DENIES Plaintiff's Motion to Strike.

## BACKGROUND

This case is a forfeiture action brought by the United States (Plaintiff) against certain monies, computer equipment, and cable television converter boxes (Defendants, hereinafter referred to as "the property" or "defendant property"). Plaintiff claims that the property is associated with a "cable pirating" scheme in which Claimants [1] purchased cable converter boxes, modified them to receive cable television programming by bypassing the local cable companies which supply the programming for a charge, and then sold the modified boxes to consumers. Complaint, ¶¶ 3–6. Plaintiff claims that the money is subject to forfeiture because it constitutes the proceeds of specified unlawful activities, namely violations of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud). *Id.* at ¶ 19. Plaintiff also claims that the computer equipment and cable converter boxes are subject to forfeiture because they are properties used, sent, carried, manufactured, assembled, sold, or advertised in violation of 18 U.S.C. § 2512 (a statute concerning communications pirating) and because they are properties involved in violations of 18 U.S.C. § 1956 (money laundering). *Id.* at ¶ 21.

Plaintiff claims that Claimants purchased unmodified cable converter boxes from, and sold modified cable converter boxes to, individuals and/or companies located in the Northern District of Georgia. *Id.* at ¶¶ 3, 7, 13, 14. *See also* Plaintiff's Response to Motions to Dismiss [34], pp. 1–4. Plaintiff seized the defendant money from a bank in the Southern District of Iowa and seized the defendant computer equipment and cable converter boxes from business establish-

---

1. Plaintiff contends that the various claimants played different roles in the alleged cable pirating scheme. For the sake of simplicity, and because disposition of the pending motions does

ments located in the District of Nebraska. Complaint at ¶¶ 18, 20. Plaintiff then moved the property into the Northern District of Georgia and now pursues this forfeiture action in this district.

## DISCUSSION

### I. Plaintiff's Motion to Strike.

▮ Plaintiff moves the Court to strike the motions filed by Claimants Gene Abboud and G & A Distributing, alleging (1) that the motions were filed late, and (2) that the motions were filed by a non-resident attorney in violation of Local Rule 110–2. The Court notes that on August 27, 1993, Gene Abboud and G & A Distributing's attorney, James Martin Davis, was admitted *pro hac vice.* [30]. The Court finds that Claimants' tardiness did not prejudice Plaintiff, and that Mr. Davis has cured his violation of Local Rule 110–2. The Court, therefore, denies Plaintiff's motion.

### II. Jurisdiction.

Plaintiff alleges, in its Complaint, that "[t]his Court has jurisdiction over the claim by virtue of 18 U.S.C. §§ 981(a)(1) and 1341, and 28 U.S.C. § 1395(c)." Complaint, ¶ 1. Plaintiff's Complaint also suggests that jurisdiction may exist pursuant to 18 U.S.C. § 2513. *Id.* at ¶ 21, In their motions, Claimants assert that this Court lacks jurisdiction over the defendant property because it was not seized within the Northern District of Georgia. Plaintiff responds by arguing that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355(a). Plaintiff's Response [35], p. 5.

▮ 18 U.S.C. § 981(a)(1) and 18 U.S.C. § 2513 give the government the authority to subject the defendant property to forfeiture. 18 U.S.C. § 1341 sets forth the substantive law on mail fraud. These statutes do not give this Court jurisdiction over the defendant property.

not require greater specificity, the Court will only refer to the claimants collectively, and will refer to them as "Claimants."

■ 28 U.S.C. § 1345 provides: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C. § 1355(a) provides in pertinent part: "The district courts shall have original jurisdiction, exclusive of the court of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress...." These provisions give federal district courts jurisdiction over the subject matter of forfeiture actions, but they do not speak to the jurisdiction of a particular district court over the actual property which is the subject of a forfeiture action. *United States v. United States Currency in the Amount of $23,481.00*, 740 F.Supp. 950, 952, 953 (E.D.N.Y.1990). *See generally* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3579 (1984 & Supp.1993); 137 Cong.Rec. S16642 (November 13, 1991) (analysis of the portion of the Annunzio–Wylie Act which was later codified at 28 U.S.C. § 1355. The same analysis was also submitted into the record at 137 Cong.Rec. S12238 (August 2, 1991)).

28 U.S.C. § 1395 is generally regarded as a venue-conferring statute. *See* 137 Cong. Rec. S16642; *United States v. Four Parcels of Real Property on Lake Forrest Circle*, 870 F.2d 586, 589 n. 4 (11th Cir.1989). Section 1395 provides in pertinent part:

    (b) A civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found.

    (c) A civil proceeding for the forfeiture of property seized outside any judicial district may be prosecuted in any district into which the property is brought.

Although this is a venue statute, there is some argument that by establishing venue in a certain judicial district, section 1395 also confers jurisdiction within that judicial district. *See* 137 Cong.Rec. S16643. The Court need not address that question, however, as Section 1395 does not reach the defendant property in this case.

■ Plaintiff has already admitted that subsection (c) applies only to property seized "outside the territorial limits of the United States." *United States v. One Caribou Aircraft Registration No. N–1017–H*, 557 F.Supp. 379, 381 (D.P.R.1983). *See also United States v. One 1974 Cessna Model 310R Aircraft*, 432 F.Supp. 364, 368 (D.S.C. 1977) (same), *disapproved of, on other grounds, by United States v. One Lear Jet Aircraft*, 836 F.2d 1571, 1575 n. 4 (11th Cir. 1988). Subsection (b) confers venue only in the judicial district in which seized property "is found." A court may not treat a piece of property as being "found" within a certain judicial district where it is physically within the district only because the government moved it there subsequent to seizing it elsewhere. Otherwise, the government could establish jurisdiction anywhere in the United States merely by transporting the seized property to a judicial district of its choosing. *United States Currency in the Amount of $23,481.00*, 740 F.Supp. at 952, 953–54; *United States v. $358,613.00, United States Currency*, 703 F.Supp. 452, 454–55 (W.D.N.C. 1988); *One 1974 Cessna Model 310R Aircraft*, 432 F.Supp. at 367–69.

Although Plaintiff does not mention 18 U.S.C. § 981(h), this subsection allows the government to bring a forfeiture proceeding "in the judicial district in which the defendant owning such property is found or in the judicial district in which the criminal prosecution is brought." There is no evidence or allegation, however, that Claimants (the only possible "defendant[s] owning such property") can be found in the Northern District of Georgia. Plaintiff also does not allege that criminal proceedings are pending against any of the alleged owners of the defendant property. Thus, 18 U.S.C. § 981(h) can not confer jurisdiction in this case.

■ This leaves only 28 U.S.C. § 1355(b)(1) as a possible jurisdiction-conferring statute in this case. 28 U.S.C. § 1355 provides in pertinent part:

    (a) The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penal-

ty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress....
(b)(1) A forfeiture action or proceeding may be brought in—

    (A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, or

    (B) any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute.

.    .    .    .    .

(d) Any court with jurisdiction over a forfeiture action pursuant to subsection (b) may issue and cause to be served in any other district such process as may be required to bring before the court the property that is the subject of the forfeiture action.

Subsection (b)(1) was added to Section 1355 by enactment of the Money Laundering Improvements Act of 1991, Pub.L. 102–550, 106 Stat. 4062, 102nd Cong., 2d Sess. (Oct. 28, 1992) (hereinafter referred to as the "Annunzio–Wylie Act," named after the Act's sponsors). The Act's legislative history and its subsequent interpretation suggest that subsection (b)(1) is a jurisdiction-conferring provision. *See* 137 Cong.Rec. S16642 (text of an analysis of the Act lamenting the lack of a statute which "defines when a court has *jurisdiction over the property* that is the subject of the suit" and touting subsection (b)(1) as resolving that problem [emphasis added]); *United States v. Contents of Account Number 2033301,* 831 F.Supp. 337, 340 (S.D.N.Y. 1993) (finding that "a close statutory reading reveals that the amendments somewhat inconsistently grant jurisdiction, but not venue, to a district court in civil forfeiture actions."). The Court finds that it has jurisdiction over the defendant property in this case because some of the acts giving rise to the forfeiture occurred within the Northern District of Georgia. *See* Complaint at ¶¶ 7–17.

### III. Venue.

■ In its Complaint for Forfeiture, Plaintiff states that this Court has jurisdiction over Plaintiff's claim by virtue of 18 U.S.C. § 981(a)(1) (civil forfeiture statute), 18 U.S.C. § 1341 (mail fraud statute), and 28 U.S.C.

§ 1395(c) (venue provision for civil forfeiture cases). Complaint, ¶ 1. Plaintiff's Complaint does not state separately what statute establishes the Northern District of Georgia as a proper venue. Claimants contend that the sole venue provision cited by Plaintiff in its Complaint—28 U.S.C. § 1395(c)—does not establish the Northern District of Georgia as a proper venue for this suit.

As discussed above, 28 U.S.C. § 1395(c) applies only to seizures made outside the territorial limits of the United States. Aware of this problem, Plaintiff argues in its response briefs that proper venue need not appear on the face of the complaint, *Clay v. Martin,* 509 F.2d 109, 113 (2d Cir.1975); 2A James Wm. Moore, *Moore's Federal Practice* ¶ 8.08 (2d ed. 1993), and that venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1355(a) and (b)(1)(A). Plaintiff's Response [35], p. 5. Claimants disagree, arguing that section 1355 is a jurisdiction-conferring statute only.

Since enactment of the Annunzio–Wylie Act, all but one of the few decisions which have touched on the issue suggest that section 1355 does not concern venue. *United States v. 105,800 Shares of Common Stock,* 825 F.Supp. 191, 196 (N.D.Ind.1993) (referring to the amended section 1355 as "granting expanded jurisdiction to the district courts"); *United States v. One 1990 Lincoln Town Car,* 817 F.Supp. 1575, 1577–78 (N.D.Ga.1993) (Shoob, J.) ("[A]mended § 1355 shows that Congress intends district courts to have jurisdiction over a forfeiture action whenever venue is properly had under a forfeiture statute such as 18 U.S.C. § 981."); *United States v. Mangini,* 1993 WL 165283 *1 (N.D.Cal. May 4, 1993) (Hamilton, Mag. J.) ("The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355 and 21 U.S.C. § 842(c)(1). Venue is proper pursuant to 28 U.S.C. § 1391(b)."). *See also Four Parcels of Real Property on Lake Forrest Circle,* 870 F.2d at 589 n. 4 (stating, prior to enactment of the Annunzio–Wylie Act: "The district courts have jurisdiction over actions for forfeiture. *See* 28 U.S.C. §§ 1355, 1356 (1982). Venue for a forfeiture action, which is an *in rem* proceeding, is proper in any district court of

the United States having jurisdiction over the property. *See id.* § 1395(b) (1982).").

The one exception to this line of cases is also the only decision to have addressed the question directly. In *United States v. Contents of Account Number 2033301,* 831 F.Supp. 337 (S.D.N.Y.1993), the court stated that "review of the legislative history, such that it is, substantiates the Government's argument that Congress intended to extend venue, as well as jurisdiction, in its Section 1355 amendments beyond the jurisdiction in which the property was 'found.'" *Id.* at 340.[2] The only legislative history the court cited in its decision, however, was the analysis of the amendment which was submitted into the Congressional Record—137 Cong.Rec. S16642.

The legislative history of the Annunzio–Wylie Act indicates that the Act was intended to increase the number of judicial districts in which the government could prosecute civil forfeiture suits. A close reading of the analysis of the Act submitted into the record at 137 Cong.Rec. S16642, however, might also suggest that the Act set out to accomplish this goal by changing only the scope of courts' jurisdiction. The analysis, commenting on the state of section 1355 unamended by the Annunzio–Wylie Act, begins by declaring that section 1355 provides for subject matter jurisdiction, and that "[t]he venue statutes for forfeiture actions provide for venue in the district in which the subject

property is located, 28 U.S.C. § 1395, or in the district where a related criminal action is pending, 18 U.S.C. § 981(h)." 137 Cong.Rec. S16642. The Analysis then laments the lack of a statute defining "when a court has *jurisdiction over the property* that is the subject of the suit," *id.* (emphasis added) (citing *United States v. United States Currency in the Amount of $23,481.00,* 740 F.Supp. 950 (S.D.N.Y.1990)[3]), and declares that the Annunzio–Wylie Act resolves the problems of "confusion and repetitive litigation of *jurisdictional* issues" and of "the government having to file multiple forfeiture actions in different districts in the same case in order to satisfy *jurisdictional* requirements" which are created by the lack of such a jurisdictional statute. 137 Cong.Rec. S16642 (emphasis added).[4] The analysis' clearly enunciated distinction between jurisdictional statutes and venue statutes, followed closely by a statement that the Annunzio–Wylie Act is designed to address the lack of a statute addressing a purely jurisdictional issue, could lead the Court to believe that the Annunzio–Wylie Act was not intended to address the question of venue. *See id.* at S16643 (revealing an implicit acknowledgement of the distinction between jurisdictional issues and venue issues).

This Conclusion is supported by subsequent statements in the analysis that "[s]ubsection (b)(1) [of section 1355] sets forth as a general rule that *jurisdiction* for an In Rem action lies in the district in which the acts

---

2. Recall, from the Court's discussion of jurisdiction, that the court in *Contents of Account Number 2033301* opined earlier in its decision that "a close statutory reading reveals that the [Annunzio–Wylie Act] amendments somewhat inconsistently grant jurisdiction, but not venue, to a district court in civil forfeiture actions." 831 F.Supp. at 340. The court apparently found that the legislative history warranted a conclusion different from that derived from a close reading of the statute.

3. *United States Currency in the Amount of $23,-481.00* (decided prior to enactment of the Annunzio–Wylie Act) addressed the question of whether a court, in a forfeiture action, may exercise jurisdiction over a piece of property seized by customs officials when the subject property is seized in the court's judicial district, but later removed to, and stored in, another judicial district. 740 F.Supp. at 952–53. The Court found that, in accordance with the relevant customs law, re-

moval of the property to another judicial district for storage does not upset the power of the court in the district in which the property was seized to exercise jurisdiction over the property. *Id.* at 953. In evaluating this and other issues before it, the court carefully distinguished issues concerning jurisdiction from issues concerning venue. *Id.* at 952–54.

4. The analysis cited two federal cases as examples of this confusion and repetitive litigation: *United States v. $10,000 in United States Currency,* 860 F.2d 1511 (9th Cir.1988) and *United States v. Premises Known as Lots 50 & 51, 2050 Brickell Avenue,* 681 F.Supp. 309 (E.D.N.C.1988). *$10,000 in United States Currency* involved only questions of jurisdiction over property removed from a judicial district subsequent to seizure. 860 F.2d at 1513–14. *Lots 50 & 51* mentioned venue, but focused on questions of jurisdiction. 681 F.Supp. at 311–14.

giving rise to the forfeiture were committed," and that subsection (b)(1) resolved past problems of having to file separate forfeiture actions in each district in which subject property is found by "providing that the court in the district where the acts giving rise to the forfeiture occurred has *jurisdiction* over the forfeiture action." *Id.* at S16642 (emphasis added), S16643 (emphasis added).

Finally, the fact that the Annunzio–Wylie Act amendments were codified in a part of the United States Code dealing with jurisdictional issues might support a conclusion that Section 1355 is strictly a jurisdiction-conferring statute.

Although these factors could suggest that subsection (b)(1) does not address venue, the Court finds that two other factors warrant a contrary finding. First, 28 U.S.C. § 1355 appears, on its face, to address venue. The language found in subsection (b)(1)—"... may be brought in ..."—is the same language found in other venue-establishing statutes. *See, e.g.,* 18 U.S.C. § 981(h) (civil forfeiture venue statute: "... may be brought in ..."); 28 U.S.C. § 1391 (general venue statute: "... may ... be brought only in ..."); 28 U.S.C. § 1395(b) (civil forfeiture venue statute: "... may be prosecuted in ...").

Second, interpreting subsection (b)(1) as addressing only jurisdiction would be contrary to the clear, overarching congressional intent behind the legislation. *See* 137 Cong. Rec. S12235 (August 2, 1991) (statement by Senator D'Amato: "The first section [of Title I of the Annunzio–Wylie Act] deals with jurisdiction *and venue,* providing that civil forfeiture actions may be brought in the district where the illegal acts giving rise to forfeiture occurred. [emphasis added]"). Congress amended Section 1355 in order to relieve the government of the need to prosecute multiple forfeiture actions from the same case in different districts. Although interpreting Section 1355 as a jurisdiction-only statute would give the government some of the intended relief, it would not solve the problem which the Act was designed to address because the government would still have to file multiple forfeiture actions from the same case in different districts when venue did not lie in one

district for all of the property. A basic reading of the subsection's language, as well as an understanding of the Annunzio–Wylie Act's general purpose—as explained at 137 Cong.Rec. S16642—lead this Court to conclude that 28 U.S.C. § 1355(b)(1) establishes the Northern District of Georgia as a proper venue for this suit.

## VI. Claim Upon Which Relief Can be Granted.

■■■ Claimants contend that Plaintiff has failed to state a claim upon which relief can be granted. Primarily, Claimants argue that Plaintiff's Complaint for Forfeiture fails to state facts showing any connection between the defendant money and the alleged unlawful activity.

In reviewing a motion to dismiss a complaint for forfeiture, the Court must consider the allegations contained in the complaint for forfeiture to be true. *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). The government need not trace the origin of all funds deposited into a bank account to determine exactly which funds were used for what transactions. *United States v. Jackson,* 935 F.2d 832, 840 (7th Cir.1991).

The Complaint for Forfeiture goes into substantial detail as to the Claimants' alleged financial and monetary transactions, mail and wire transactions, activities alleged to be in violation of 18 U.S.C. §§ 1956 and 1957, and deposits of money into the Iowa bank account. The Court finds that Plaintiff has not failed to state a claim upon which relief can be granted.

## V. Lawfulness of the Seizure.

■■■ The seizure of the defendant property was effected pursuant to a warrant issued by a United States Magistrate Judge. Claimants argue that the seizure was illegal because Magistrate Judges have no authority to issue such warrants. Federal Rule of Criminal Procedure 41(a) gives Magistrate Judges the authority to issue warrants.

■■■ Claimants also argue that the seizure was illegal because the government did not have probable cause that the property was forfeitable under the laws of the United

States. Even if the defendant property was seized illegally, the proper response would not be to dismiss the government's suit, but to preclude admission of the property into evidence at trial. *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1040, 104 S.Ct. 3479, 3484, 82 L.Ed.2d 778 (1984); *In re Kingsley,* 802 F.2d 571, 578–79 n. 9 (1st. Cir.1986); *United States v. Parcel of Property Located at 155 Bemis Road,* 760 F.Supp. 245, 251 (D.N.H. 1991). The Court, therefore, will not dismiss Plaintiff's Complaint on this ground.

## VI. Eighth Amendment.

■ Claimants contend that forfeiture of the defendant property constitutes an "excessive fine" in violation of the Eighth Amendment. Claimants argue that the forfeiture is unconstitutional because the government has not shown that it represents the proceeds of any specified unlawful activity, or that is was used with an intent to promote any specified unlawful activity.

Although the Supreme Court has recently held that the Excessive Fines Clause of the Eighth Amendment applies to civil forfeiture cases, *Austin v. United States,* —— U.S. ——, ——, 113 S.Ct. 2801, 2803, 125 L.Ed.2d 488 (1993), the Court did not set forth a test to determine when a forfeiture is excessive under the Eighth Amendment. Before evaluating whether the size of a forfeiture is excessive, a court must first determine how much of the seized property will actually be forfeited. Because it would be premature for this Court to make such a determination at this stage in the proceedings, it is not yet possible to evaluate the allegedly excessive nature of any yet-to-occur forfeiture.

## VII. Transfer of Venue.

■ Claimants move the Court to transfer this case to the District of Nebraska. In support of their motions, Claimants assert that venue is proper in the District of Nebraska, that transferring venue would not inconvenience Plaintiff, and that denial of their motion would subject them to enormous and unnecessary expense, threaten the availability of their witnesses, and disserve the public interest. Claimants also request an oral hearing on their motion.

■ 28 U.S.C. § 1404 provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Plaintiff's choice of forum is entitled to significant weight. *Motown Record Corp. v. Mary Jane Girls, Inc.,* 660 F.Supp. 174, 175 (S.D.N.Y.1987); *Grey v. Continental Marketing Assoc., Inc.,* 315 F.Supp. 826, 831 (N.D.Ga.1970) (Edenfield, J.). If transfer merely shifts the inconvenience of litigating in a given forum from one party to the other, or if the balance of factors is only slightly in favor of the movant, a court should deny the motion to transfer. *Grey,* 315 F.Supp. at 831. The burden is on the movant to establish why a court should transfer venue. *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966); *Grey,* 315 F.Supp. at 831 (finding that the movant has a "strong burden").

As a preliminary matter, the Court finds that an oral hearing on Claimants' motion is unnecessary. In addressing the merits of Claimants' motions, the Court finds first that the action could have been brought in the District of Nebraska. According to the Court's interpretation of 28 U.S.C. § 1355(b)(1), because some of the alleged actions giving rise to the forfeitures occurred in Nebraska (i.e., shipments of the converted cable boxes), the District of Nebraska would be a proper venue for Plaintiff's suit.

In terms of convenience to the parties, Claimants assert that Gene Abboud lives in Omaha, Nebraska, and that G & A Distributors is a corporation incorporated in nearby Council Bluffs, Iowa. Claimants also assert that all of their witnesses (who will allegedly number at least twenty-five) reside in Nebraska, with the exception of some of their expert witnesses. Furthermore, Claimants contend that most of Plaintiff's witnesses also reside in Nebraska or in nearby Council Bluffs, Iowa.

As for the general interests of justice, Claimants assert that the dockets in the District of Nebraska are much less congested than those in the Northern District of Georgia. Transferring the case, therefore, would

allow it to come to trial much sooner. *See Motown Record Corp.,* 660 F.Supp. at 175 (finding that courts may consider the state of dockets in both the transferor and transferee courts in deciding motions to transfer). *But see Grey,* 315 F.Supp. at 831 (finding that the relative crowded nature of dockets in the two fora is not accorded much weight). Claimants also contend that transferring the case would decrease the costs of litigation by minimizing travel and related costs for themselves and for their witnesses. *See Nocona Leather Goods Co. v. A.G. Spalding & Bros., Inc.,* 159 F.Supp. 269, 271 (D.Del.1958) (finding that reduction of costs of litigation is a proper factor in determining whether to transfer a case to another district, but also finding that location of three employee witnesses in other forum was of little persuasive weight). Claimants contend further that this Court should grant their motions because a majority of the witnesses either live in Nebraska or are within Claimants' subpoena power only if the case is transferred to Nebraska. *See Central Hudson Gas and Elec. Corp. v. Empresa Naviera Santa S.A.,* 769 F.Supp. 208, 209 (E.D.La.1991) (finding that transfer was appropriate where, among other things, the majority of witnesses lived in the other forum).

Plaintiff responds by arguing that Claimants, in their Answers to Mandatory Interrogatories, state that they have only eleven prospective witnesses, that only three of these witnesses reside in Nebraska or Iowa, and that those three witnesses are either their employees or their relatives. [28-4; 29-4]. Plaintiff also contends that it intends to bring criminal charges in the Northern District of Georgia against certain individuals and properties associated with this forfeiture action. Plaintiff contends further that because the defendant property is in the Northern District of Georgia, even if the Court transferred the case to Nebraska, Claimants would have to travel to this district to inspect the property. Furthermore, the government would be forced to incur the added costs of moving the defendant property to Nebraska for trial and then back to the Northern District of Georgia for any possible criminal proceeding.

The Court finds that transfer is not warranted in this case. Claimants' showing of potential witness inconvenience is not strong. The majority of the witnesses that Claimants list are in states other than Georgia, Nebraska, or Iowa. Thus, they will have to travel to attend trial in either forum. *See Grey,* 315 F.Supp. at 831 (finding that in order to demonstrate a need to transfer because of witness location, the movant must show that the witnesses at issue are key witnesses and that their testimony cannot be effected by use of depositions—Claimants here have shown neither). Also, because the defendant property is now in the Northern District of Georgia, and because it will likely be used in this district in any potential related criminal actions, transferring this case to the District of Nebraska would shift the inconvenience of forum location to Plaintiff.

## CONCLUSION

The Court DENIES Claimant Gene Abboud's Motion for Change of Venue [17], DENIES Claimant Gene Abboud's Motion to Dismiss [18] DENIES Claimant G & A Distributing's Motion to Dismiss [20], DENIES Claimant G & A Distributing's Motion for Change of Venue [21], DENIES Claimant M & D Electronics' Motion to Dismiss or, in the alternative, to Transfer [23], and DENIES Plaintiff's Motion to Strike [27].

So ORDERED.