**Joe L. MARTINEZ, Plaintiff,**

v.

**MEMBERS OF JUDICIAL STANDARDS COMMISSION OF the STATE OF NEW MEXICO, Defendants.**

Civ. A. No. 74–543.

United States District Court,
D. New Mexico.

Dec. 13, 1974.

Ortega, Snead, Dixon & Hanna by Arturo G. Ortega and Michael Bustamonte, and Marchiondo & Berry, P. A. by William C. Marchiondo and Mary C. Walters, Albuquerque, N. M., for plaintiff.

Morton A. Resnick, Asst. Atty. Gen., Santa Fe, N. M., Modrall, Sperling, Roehl, Harris & Sisk by James E. Sperling, Albuquerque, N. M., Olmsted, Cohen & Bingaman by Charles D. Olmsted, Santa Fe, N. M., and Botts & Cole by Robert W. Botts, Albuquerque, N. M., for defendants.

Before DOYLE, Circuit Judge, and PAYNE and MECHEM, District Judges.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, Circuit Judge.

This is a declaratory judgment action which seeks a determination by this court that § 32 Article VI of the Constitution of New Mexico [1] plus the implementing statutes §§ 16–8–1 through 16–

1. The pertinent provision of the Constitution is as follows:

There is created the "judicial standards commission" consisting of two justices or judges and two lawyers selected as may be provided by law to serve for terms of four years, and five citizens, none of whom is a justice, judge or magistrate of any court or licensed to practice law in this state, who shall be appointed by the governor for five-year staggered terms as may be provided by law. If a position on the commission becomes vacant for any reason, the successor shall be selected by the original appointing authority in the same manner as the original appointment was made and shall serve for the remainder of the term vacated. No act of the commission is valid unless concurred in by a majority of its members. The commission shall select one of the members appointed by the governor to serve as chairman.

In accordance with this section, any justice, judge or magistrate of any court may be disciplined or removed for willful misconduct in office or willful and persistent failure to perform his duties or habitual intemperance, or he may be retired for disability seriously interfering with the performance of his duties which is, or is likely to become, of a permanent character. The commission may, after investigation it deems necessary, order a hearing to be held before it concerning the discipline, removal or retirement of a justice, judge or magistrate, or the commission may appoint three masters who are justices or judges of courts of record to hear and take evidence in the matter and to report their findings to the commission. After hearing or after considering the record and the findings and report of the masters, if the commission finds good cause, it shall recommend to the Supreme Court the discipline, removal or retirement of the justice, judge or magistrate.

8–3, N.M.Stat.Ann. (1953),[2] are unconstitutional, being in conflict with the Fourteenth Amendment, the due process clause of the Constitution of the United States and the Constitution of New Mexico.

The plaintiff is a Justice of the Supreme Court of New Mexico, having been elected in November 1972. The defendants are members of the Judicial Standards Commission of the State of New Mexico and have lodged a complaint against the plaintiff.

Pursuant to the plaintiff's request, a three-judge court has been convened pursuant to 28 U.S.C. §§ 2281 and 2284. A temporary restraining order has been entered by Chief Judge Payne, the effect of which is to maintain the status quo pending a hearing. Subsequently, on November 22, 1974, a hearing was held at Albuquerque, New Mexico. On that occasion arguments were presented and a brief was filed by the plaintiff.

The constitutional and statutory scheme set forth in Notes 1 and 2 allows the Judicial Standards Commission to investigate charges made against judges and justices. Based upon this inquiry, findings and recommendations are submitted to the Supreme Court of New Mexico which is authorized to discipline the justice, judge or magistrate of any court or may remove said judge, justice or magistrate for willful misconduct in office or willful and persistent failure to perform his duties or habitual intemperance, or he may be retired for disability interfering with the performance of his duties which is or is likely to become of a permanent character. If the Commission recommends disciplinary action, thereafter, the Supreme Court must review the record of the proceedings and may take further evidence following which it may order the discipline, removal or retirement or it may reject the recommendation. In the event of removal, the salary of the judge or justice ceases. If he is ordered retired, he has the rights which he would have had under the retirement program.

**2.** The implementing statute provides for the composition and selection of the Commission:

16–8–1. Judicial Standards Commission— Selection — Terms. — The judicial standards commission consists of nine [9] positions:

A. Positions 1 through 5, each of which shall be filled by a person who is a qualified elector of this state, who is not a justice, judge or magistrate of any court, and who is not licensed to practice law in this state. The governor shall fill each of these positions by appointment of qualified persons. Following initial terms specified in this subsection, these positions shall be filled in the same manner by qualified persons who serve for five [5] years or less, in such manner that one [1] term expires on June 30 each year, and so that not more than three [3] of the five [5] positions are occupied by persons from the same political party. Initial terms begin on July 1, 1968 and expire as follows:

(1) position 1 on June 30, 1969;

(2) position 2 on June 30, 1970;

(3) position 3 on June 30, 1971;

(4) position 4 on June 30, 1972; and

(5) position 5 on June 30, 1973.

B. Positions 6 and 7, each of which shall be filled by a person who is licensed to practice law in this state. These positions shall be filled by appointment of qualified persons by majority vote of all members of the board of commissioners of the state bar of New Mexico, but no member of the board of commissioners shall be appointed. Following initial terms specified in this subsection, these positions shall be filled in the same manner by qualified persons who serve for four [4] years or less, in such manner that one [1] of the terms expires on June 30 each even-numbered year. Initial terms begin on July 1, 1968 and expire as follows:

(1) position 6 on June 30, 1970; and

(2) position 7 on June 30, 1972.

C. Positions 8 and 9, each of which shall be filled by a person who is a justice of the Supreme Court or a judge of the court of appeals or district court. These positions shall be filled by appointment of qualified persons by the Supreme Court. Following initial terms specified in this subsection, these positions shall be filled in the same manner by qualified persons who serve for four [4] years or less, in such manner that one [1] of the terms expires on June 30 each odd-numbered year. Initial terms begin on July 1, 1968 and expire as follows:

(1) position 8 on June 30, 1971; and

(2) position 9 on June 30, 1973.

Plaintiff first maintains that requiring him to appear at the hearing is a denial of due process guaranteed by the United States Constitution and that of New Mexico.

Second, plaintiff argues that the charges result from information which was confidential and which is therefore inadmissible.

Third, he contends that there is deprivation of an opportunity to discover evidence and otherwise prepare for the hearing.

Fourth, it is alleged that the constitutional provision (creating the scheme) is invalid on its face. Apart from the formal allegations, plaintiff's underlying position gleaned from the arguments is that the constitutional provision and the statutes constitute an invalid invasion of the rights of the members of the judiciary in that the recognized constitutional remedy for removal of a judge is impeachment. It is said that this present additional legislative remedy deprives him of the guarantee of separation of powers which is expressly a part of the Constitution of New Mexico and also of the guarantee of a republican form of government. United States Constitution, Article IV, § 4.

For reasons other than the above, we must dismiss the action.

So far, the only proceeding which has occurred is the filing of a charge with the Commission. The Commission has insisted that this charge is not to be publicized at this time. The respondent, on the other hand, has indicated a willingness to have it publicized. Inasmuch, however, as our decision does not reach the merits, our position is that it would be inappropriate for this court to publicize it over the Commission's objection. We must note in passing, however, that the charge is general and is in the terms of and in the language of the constitutional provision.

The reasons for our inability to determine the validity of the statutory and constitutional scheme on its face is that, first, the proceedings have barely commenced. Thus, there has been no exhaustion of administrative remedies before the Commission or of judicial remedy before the Supreme Court of New Mexico. Secondly, the scheme is not palpably bad and we must not presume that either the Commission or the Supreme Court of New Mexico will misuse the power granted. Furthermore, it appears to be a case for abstention.

I.

It is fundamental that the plaintiff who seeks federal court relief from a state regulatory scheme must first exhaust remedies which are provided by the state law. This is illustrated by an early Supreme Court case, Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908). In that case the Virginia State Corporation Commission had entered a rate order applicable to Atlantic. Instead of appealing it to the Supreme Court of Virginia in accordance with the procedure provided by statute, the railroad brought an action in federal district court seeking an injunction. When the case reached the Supreme Court, proceedings were compared to a habeas corpus petition brought in federal court by one who had not appealed to the highest court of the state. The Supreme Court did note that the federal court action could be renewed if the railroad failed to obtain relief in the Virginia court. One exception to this doctrine is the federal civil rights action. See McNeese v. Board of Ed. for Com. Unit. Sch. Dist. 187, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) which was a school desegregation case. In this instance the Supreme Court said that there was no underlying state issue to be litigated and, therefore, there was no reason for postponing the action in federal court. The Court relied on its decision in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Our case, of course, is not a civil rights action and hence it is subject to the requirement of exhaustion of

state administrative remedies. *See* Wright, Law of Federal Courts, pp. 186, 188, § 49.

## II.

A corollary reason for our decision to dismiss the action, at this stage at least, is that we find it necessary to abstain.

■ Where, as here, there are underlying state laws which are capable of disposing of the case, the federal court refrains from deciding the federal questions which are presented until such time as the state court has decided the state issues. The idea is that should the state court or state tribunal decide in favor of the aggrieved person seeking federal aid, that would end the matter and there would be no need for the federal court to pass on the federal question. This category of abstention which is often called type 1 is illustrated by Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), wherein the company sought to enjoin enforcement of an order of the Texas Railroad Commission on federal constitutional grounds. In holding that the abstention doctrine applies in this situation, the Supreme Court pointed out that the federal court should not make a tentative decision which is susceptible to being replaced by a state decision.

Furthermore, it was recognized that abstention in this type of situation is a wise course because it prevents needless friction between state and federal courts. Exceptions to application of the abstention doctrine in the present type of situation are, first, where the state law is settled and, secondly, where the state statute is palpably contrary to the Constitution of the United States with respect to how it is construed. *See* Wright, Law of Federal Courts § 52, et seq.

At bar it cannot be said that the New Mexico scheme is on its face contrary to the Federal Constitution. The contention of plaintiff that it violates the doctrine of separation of powers falls short of establishing that it violates the Constitution of the United States. This issue strikes us as being a non-justiciable one. *Cf.* Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). *See also* Pacific States Tel. & T. Co. v. Oregon, 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377 (1911) and Taylor and Marshall v. Beckham, 178 U.S. 548 (1900).

## III.

■■ There is a problem with the complaint which requires at least brief mention. That is that the complaint in this case fails to set forth a federal question. Its reference is to the three-judge court statute, 22 U.S.C. §§ 2281 and 2284. These are procedural and do not serve to invoke the jurisdiction of the federal court. An allegation of federal question jurisdiction must identify the provisions of the Constitution and laws of the United States under which the cause arises. The particular federal statute which confers jurisdiction should also be cited. Therefore, if and when the cause is refiled these requirements must be satisfied.

Accordingly, the action must be dismissed. The dismissal is, however, without prejudice to the right of the plaintiff to refile if the plaintiff fulfills the mentioned requirements.

It is so ordered.