**Les BARNETT, Terry Lathan, and Percy Johnson, Plaintiffs,**

**v.**

**State of ALABAMA, et al., Defendants.**

**Gonzalo Fitch Montiel, Plaintiff,**

**v.**

**Don Davis, et al., Defendants.**

**Nos. CIV.A. 01–0434–BH–S, CIV.A. 01–0447–BH–S.**

United States District Court, S.D. Alabama, Southern Division.

Nov. 20, 2001.

Daniel S. Cushing, Cooper C. Thurber, Lyons, Pipes & Cook, Paul Charles Wesch, Mobile, AL, Matthew Forest Stowe, pro hac vice, Patton Boggs LLP, Washington, DC, for Les Barnett, Terry Lathan, Percy Johnson, plaintiffs.

Mark G. Montiel, Mark G. Montiel, P.C., Montgomery, AL, for Gonzalo Fitch Montiel, plaintiff.

John J. Park, Jr., Deputy Attorney Gen., Charles Brinsfield Campbell, Office of the Attorney General, Montgomery, AL, for State of Alabama, Steve Windom, Seth Hammett, Bill Pryor, Jim Bennett, Don Davis, Adrian Johns, Mary Presnell, Otha Lee Biggs, Rachel Agerton, James Bennett, defendants.

Larry Menefee, Montgomery, AL, for Don Siegelman.

James U. Blacksher, Birmingham, AL, for Ken Guin, Andrew Hayden, movants.

*ORDER TRANSFERRING CONGRESSIONAL DISTRICTING CLAIMS TO THE MIDDLE DISTRICT OF ALABAMA*

PER CURIAM.

There presently are three separate actions pending in federal court challenging the State of Alabama's election districts for its seats to the United States House of Representatives. Two of the actions are pending in this court, the United States District Court for the Southern District of Alabama; the third action is pending in the United States District Court for the Middle District of Alabama. Two separate three-judge courts have been convened pursuant to 28 U.S.C. § 2284, one in each district. At issue are motions to transfer the two challenges pending before this court to the Middle District of Alabama.

## I. BACKGROUND

These challenges arise from the malapportionment of the State of Alabama's congressional election districts as a result of changes in population evidenced by the 2000 census. According to the 2000 census, the State of Alabama increased in population over the past decade by over 400,000 residents. As a result, previously-drawn election districts for the state's seats to the United States House of Representatives no longer contain equivalent populations. Purportedly, six out of seven congressional districts are now overpopulated and the seventh district is significantly underpopulated. The State of Alabama, however, has yet to redistrict its congressional seats.

On or about June 15, 2001, plaintiffs Les Barnett, Terry Lathan, and Percy Johnson filed an action in this court challenging the malapportionment of the State of Alabama's congressional districts as violating the United States Constitution and the Alabama constitution (the "*Barnett* case"). The named defendants were the State of Alabama and various state officers whose positions purportedly include the duty to redistrict the state's congressional districts following the release of the decennial census.[1] In their complaint, the *Barnett* plaintiffs requested the appointment of a three-judge court pursuant to 28 U.S.C. § 2284(a), which provides that "a district court of three judges shall be convened ... when an action is filed challenging the constitutionality of the apportionment of congressional districts ...." In response, the defendants filed a motion to dismiss, in part, on the basis that none of the defendants, in his official capacity, is a resident of the Southern District of Alabama.

On or about June 21, 2001, plaintiff Gonzalo Fitch Montiel filed a separate action challenging, in part,[2] the malapportionment of the State of Alabama's congressional districts (the "*Montiel* case"). In addition to naming as defendants some of the same state officers[3] as the *Barnett* plaintiffs, Mr. Montiel also named several

---

1. The state officers included Don Siegelman, the Governor of the State of Alabama, Steve Windom, the Lieutenant Governor of the State of Alabama, Seth Hammett, the Speaker of the Alabama House of Representatives, Bill Pryor, the Attorney General of the State of Alabama, and Jim Bennett, the Secretary of State of the State of Alabama.

2. Mr. Montiel also brought challenges asserting the alleged malapportionment of the State of Alabama's legislative districts and its Board of Education districts. Those challenges are not affected by this Order.

3. The state officers include Steve Windom, the Lieutenant Governor of the State of Alabama, and James Bennett, the Secretary of State of the State of Alabama.

probate judges residing in the Southern District of Alabama. As in the earlier filed case, Mr. Montiel requested the appointment of a three-judge court.

On or about July 5, 2001, plaintiff Willie Douglas filed an action challenging the malapportionment of the State of Alabama's congressional districts in Alabama state court (the "Douglas case"). The named defendants were the State of Alabama and three state officers also named in the Barnett case.[4] On or about August 10, 2001, Mr. Douglas' action was removed to the United States District Court for the Middle District of Alabama, where it remains pending. A three-judge court was convened in the case on August 31, 2001.

Although the Barnett case and the Montiel case were filed prior to the Douglas case, the Douglas case was the first action in which a three-judge court was convened. Due to concerns of the district court judge originally assigned to both the Barnett and Montiel cases regarding standing, ripeness and jurisdiction, a hearing on the propriety of convening a three-judge court was held September 25, 2001. Subsequent to the hearing, a three-judge court was requested. A single three-judge court was convened for both cases on October 1, 2001.

Based on the appointment of the two separate three-judge courts, defendants in both the Barnett case and the Montiel case have moved to transfer the congressional challenges to the Middle District of Alabama. Although the defendants no longer assert venue is lacking in this dis-

trict, likely due to the fact the probate judges residing herein are now named as defendants in both actions,[5] they contend a transfer is appropriate so that the actions can be consolidated with the Douglas case and all three challenges to the State of Alabama's congressional districts can be heard by the same three-judge court. Defendants also seek transfer in the interest of justice and the convenience of the parties and the witnesses.

The Barnett plaintiffs have agreed to transfer their claims to the Middle District of Alabama for consolidation with the Douglas case.[6] Mr. Montiel, however, contends his choice of forum is entitled to deference and, therefore, his challenge should remain in the Southern District of Alabama.

## II. DISCUSSION

Whether to transfer a case to another district is a matter within the discretion of the court. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988). The federal change of venue statute provides that the court may transfer a case to another district in which it might have been brought in the interest of justice or for the convenience of the parties or witnesses. 28 U.S.C. § 1404(a). A motion to transfer under § 1404(a) thus calls on the district court to make an individualized, case-by-case determination based on principles of fairness and convenience. Stewart Org., Inc., 487 U.S. at 29, 108 S.Ct. at 2244. In this matter, significant factors for consid-

---

**4.** The state officers included Don Siegelman, the Governor of the State of Alabama, Bill Pryor, the Attorney General of the State of Alabama, and Jim Bennett, the Secretary of State of the State of Alabama.

**5.** It appears the probate judges were included solely for purposes of venue. Whether the probate judges are properly named defendants has not been raised in a motion to dismiss, although Defendant Don Siegelman

notes in his pleadings that the "probate judges are not necessary parties." See Doc. 39 in the Barnett case.

**6.** At oral argument on the motions to transfer, the Barnett plaintiffs stated they did not object to transfer so that the matter can be consolidated with the Douglas case. Their only concern, however, is that the Douglas case would be remanded, thus obviating the need for transfer.

eration include preventing the duplication of effort and incompatible rulings, balancing the convenience to the parties and witnesses, and assessing the applicability of the "first filed" rule.

### A. *Preventing the Duplication of Effort and Incompatible Rulings*

Preventing the duplication of effort and incompatible rulings strongly weigh in favor of transfer. A separate three judge court already has been convened in the Middle District of Alabama to adjudicate the constitutionality of the very districts challenged in these cases. If the districts are found to be malapportioned, that court will be charged with the task of developing a remedy. These duties will involve significant expenditure of judicial resources and effort. Additionally, the court likely will need to retain statisticians and experts, possibly at the expense of the parties. To permit parallel, duplicative litigation in this district would serve no purpose except waste the time, finances, and energy of all involved. Furthermore, the presence of competing lawsuits gives rise to the risk of conflicting results. By transferring these actions for consolidation with the *Douglas* case, we can prevent the duplication of effort and possibility of incompatible rulings.

### B. *Balancing the Convenience*

The convenience of the parties and witnesses also weighs strongly in favor of transfer. The entity charged with redistricting congressional seats after each decennial census is the Alabama legislature, which sits in Montgomery, within the Middle District of Alabama. As a result, most, if not all, evidence relevant to these cases will be located in that district.[7] Addition-

ally, the majority of witnesses will be located therein. Furthermore, the primary defendants are state officers whose residence, in their official capacity, is in Montgomery. Of additional note is the fact that the Alabama legislature specifically provided in Act No. 2001–728 that state court challenges to its legislative districting plans must be brought in Montgomery, thereby indicating litigation in the Middle District is significantly more convenient for the State of Alabama and its officers.

Although a plaintiff's choice of forum generally should not be lightly disturbed, the weight accorded to Mr. Montiel's choice of forum is considerably reduced by virtue of the fact that he brought his challenge as a class action. *See, e.g., Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947) ("But where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."); *Bolton v. Tesoro Petroleum Corp.*, 549 F.Supp. 1312, 1313–14 (E.D.Pa.1982) ("It has been consistently held, however, that the weight accorded to plaintiff's choice of forum is considerably reduced in class and derivative actions, where each of many potential plaintiffs may claim the right to have the action heard in his home forum, and where the nominal plaintiff's role in the litigation is likely to be quite minimal."). Furthermore, as discussed *supra*, the *Barnett* plaintiffs concede to transfer and, therefore, their choice of forum is of little weight.

---

7. Given that most of the relevant documents and databases likely are in the possession or control of the State of Alabama, and most of the witnesses likely are State of Alabama em- ployees, the taxpayers of Alabama will be forced to bear the costs of transporting state witnesses and documents to the Southern District of Alabama.

On balance, we find that the considerations of convenience to the parties, inconvenience to the witnesses and the public, as well as the conservation of time, energy and money dictate transferring this case to the Middle District of Alabama.

### C. Application of the "First Filed" Rule

The "first filed" rule provides that "when parties have instituted competing or parallel litigation in separate courts, the court initially having jurisdiction should hear the case." *Allstate Ins. Co. v. Clohessy*, 9 F.Supp.2d 1314, 1315–16 (M.D.Fla. 1998); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982) ("In absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case."). A principal concern behind the "first filed" rule, as with 28 U.S.C. § 1404(a), is preventing duplication of effort and incompatible rulings. *Allstate*, 9 F.Supp.2d at 1316.

The "first filed" rule carries less weight in this matter than in a typical action involving parallel litigation because of the particular procedural posture of the cases. The appointment of a three-judge court is an unusual occurrence arising in very few cases. More unusual is the appointment of two separate three-judge courts within the same state to adjudicate challenges to the same election districts. Although both the *Barnett* and *Montiel* cases were filed in this district a few days before the *Douglas* case was filed in Montgomery, the three-judge court in *Douglas* was the first convened. Furthermore, the *Douglas* three-judge court was formed a full month prior

to the appointment of this court. As a result, arguments could be made either way as to which case should be viewed as the earlier action.

Even if the *Barnett* or *Montiel* cases were considered the "first filed," we are mindful that the rule is not meant to be rigid, mechanical or inflexible, but is to be applied in a manner that best serves the interests of justice. *See EEOC v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir.1988) (noting that the rule is sufficiently flexible to allow for rare or extraordinary circumstances, inequitable conduct, bad faith and forum shopping). Although the forum where an action is first filed typically is given priority over subsequent actions, it is appropriate to depart from this general maxim when there is a showing of balance of convenience in favor of the second forum or there are special circumstances which justify giving priority to the second action. *Allstate*, 9 F.Supp.2d at 1316. Assuming without deciding that the "first filed" rule applies, we find both exceptions present in these cases.

The balance of convenience under the "first filed" rule involves consideration of the same factors that apply to the determination of whether transfer is appropriate under § 1404(a). *Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 56 (S.D.N.Y. 2001). As discussed *infra*, these factors weigh strongly in favor of transfer. Furthermore, based on the special circumstances concerning the earlier appointment of a separate three-judge court in the Middle District of Alabama, we conclude the *Douglas* challenge should be given priority over the *Barnett* and *Montiel* challenges to the State of Alabama's congressional districts.[8]

---

8. We find that granting priority to the *Douglas* case will not result in impermissible forum-shopping. This is not a circumstance where a party seeks transfer in an effort to have a more favorable forum's law applied— the parties do not dispute the applicable law. *See, e.g., Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (holding that the change of venue statute was not de-

## III. CONCLUSION

It is ORDERED that *Barnett v. State of Alabama*, 01–CV–434–BH–S be TRANSFERRED to the Middle District of Alabama. It is further ORDERED that Count II of the Amended Complaint in *Montiel v. Davis*, 01–CV–447–BH–S, be SEVERED and TRANSFERRED to the Middle District of Alabama.

## DISSENT

In its opinion, the majority transfers these cases, based on an erroneous balance of the venue-transfer factors, to be consolidated with a case which has a shaky jurisdictional foothold in federal court and which is before a three-judge court that is duty-bound to stay its proceedings in deference to this Court, host to the first-filed action. This transfer neither serves the interests of justice, nor greatly conveniences the parties or any potential witnesses, and denies the Plaintiffs in these two cases the right to sue in their home forum.[1] Because I believe the majority opinion all but ignores these established legal principles, I am compelled to dissent.

Plainly and simply put, the majority opinion misbalances the transfer-of-venue factors. While it ignores considerations of law and precedent that determine the weight to be assigned to the various factors, it over-emphasizes selected ones, thus giving them far more weight than they legally deserve. To point out the majority opinion's misapplied reasoning, I will begin by examining the venue-transfer factors it relies on, showing where the opinion stumbles in weighing these factors. I will then turn to the first filed rule, an independent consideration which the majority incorrectly treats as a second look at the venue factors.

### The Majority's Venue–Factor Balancing Act

The majority opinion incorrectly balances the factors warranting venue transfer because it assigns the wrong weight to each of the factors, tipping the scales toward transfer. The factors it considers in favor of transfer, in the order of the greatest to least weight it assigns to each, are: (1) a three-judge court has already been convened in the Middle District, (2) transfer would convenience the witnesses, (3) transfer would convenience the parties, and, possibly (4) that the majority suspects some impropriety on the Plaintiffs' part, namely that the Plaintiffs improperly joined the probate judges from the counties comprising the Southern District. On the other side of the balance is just one factor, the *Montiel* Plaintiff's choice of forum, but the majority discounts this by noting that the *Barnett* Plaintiffs consented to transfer, and Mr. Montiel brought his claim as a class action.

If these factors were the right factors, assigned their proper weight when given full consideration, I would not be dissenting. But they are not the right factors:

---

signed to narrow venue privilege of plaintiff or to defeat state-law advantages that might accrue from exercise of venue privilege but was simply to counteract inconveniences that flowed from venue statutes by permitting transfer to convenient federal court). In fact, an argument could be made that it is the *Barnett* and *Montiel* plaintiffs who are forum-shopping. Originally, the *Barnett* plaintiffs named only the State of Alabama and various state officers. In response to a motion to dismiss for lack of proper venue, the plaintiffs amended their complaint to add as defen-

dants several probate judges residing in the Southern District of Alabama. The *Montiel* plaintiffs adopted a similar tactic, even though probate judges do not appear, under the Alabama constitution or statutes, to have any duties with regard to redistricting.

1. Transfer may also stop the Plaintiffs from being heard in any forum. The effect of the cases being transferred is not clear, nor is the potential effect of the Middle District's remanding the case before it.

under present law and precedent some should not be considered at all, while others, properly considered, have been either beefed-up or starved by the opinion's failure to consider everything. This distorts the balance, and I cannot agree to it.

Here is how the factors should be weighed under present law. First, the majority opinion makes it clear that the biggest factor on the transfer side of the scales is that these cases can be consolidated with a case in the Middle District of Alabama, in the name of judicial economy. The majority points out that the Middle District of Alabama convened a three-judge court, "a full month prior to the appointment of this court,"[2] to hear claims that parallel our Plaintiffs' claims, that the U.S. Congressional districts within the State of Alabama are malapportioned in violation of the U.S. and Alabama Constitutions. This factor should carry much less weight than the majority assigns it for two reasons: (1) the case before the Middle District at present has a shaky foothold in federal court, and could be tottering on the brink of remand to state court, and (2) the "first filed" rule places on the three-judge court in the Middle District a duty to stay its consideration of its case in deference to this Court, the home of the first-filed action. Because the first filed rule is really a consideration distinct from venue-transfer, I will turn to it after examining the majority opinion's venue factor-balance.

No one disputes that the Middle District has had a motion to remand pending before it since at least October. This remand motion apparently raises serious questions concerning the Middle District's jurisdiction, yet the majority opinion ignores its presence. The remand motion matters because, if it turns out that the Middle District does not have jurisdiction, then the three-judge court convened to hear the case in the Middle District will have to be dissolved. *See Dickson v. Ford*, 521 F.2d 234, 235 (5th Cir.1975) (where the predecessor to our circuit Court of Appeals upheld a three-judge district court's dissolving itself when it concluded that the district court did not have jurisdiction, as the plaintiff had presented a non-justiciable claim). *See also Epstein v. Lordi*, 261 F.Supp. 921, 929 (D.N.J.1966) ("if prior cases have rendered the constitutional issues moot or settled, the proper procedure is to disband the three judge court and remand the matter to the single district judge before whom it was originally brought"). If the three-judge court is dis-

---

**2.** The Middle District's case is *Douglas v. State of Alabama*, 01–CV–992. *Douglas* was filed in state court after *Barnett* and *Montiel* were filed in this Court. The state-court case was later removed to the Middle District of Alabama. Once the Middle District had *Douglas* before it, the court convened a three-judge court on August 30, 2001. This Court convened its three-judge court on October 1, 2001. The majority opinion characterizes my delay in calling for three judges as precipitated by "concerns...regarding standing, ripeness, and jurisdiction." This I freely admit: the single-judge district court must concern himself with matters of jurisdiction before invoking the three-judge-court-convening procedure. Only after the single-judge court is assured of jurisdiction should the court call

for two more judges. *See infra* (at discussion of "first filed" rule).

In contrast, according to the *Douglas* docket sheet, the single-judge Middle–District court asked for argument on jurisdictional matters (standing and ripeness), but before hearing this argument, convened a three-judge court. After the three-judge court had been convened, the *Douglas* plaintiff filed a motion to remand the action to state court.

The majority's reliance on the date each three-judge court was convened unjustly punishes the *Montiel* and *Barnett* plaintiffs for this Court's following the law: first addressing the Defendants' motions to dismiss on jurisdictional grounds to confirm jurisdiction, and then requesting that a three-judge court be convened.

solved, another three-judge court will have to be convened to hear these two cases once they arrive in the Middle District.

Besides, the remand motion has been pending there for over a month. Even if the Middle District eventually rules that it does have jurisdiction, with jurisdictional grounds that are apparently so confounding as to keep three judges considering them for over a month, it is disingenuous for the majority's opinion to so boldly state that transfer and consolidation will best serve judicial economy. The Middle District's considering the remand motion has stalled any head start it may have had on this Court, and nothing can assure the majority that the Middle District will be able to clear up the jurisdictional matter speedily. These cases, once transferred, could be placed in the same holding pattern for any amount of time. Sending them to Montgomery seems, then, to only be slowing their progress toward resolution.

Also, it is not clear that the cases can be consolidated once they arrive in the Middle District, assuming that district has jurisdiction over *Douglas*. I know of no authority for one three-judge court to transfer a case to another three-judge court for the two distinct cases to be consolidated. Where this Court may have authority to transfer the venue of these cases to the Middle District, such a transfer would likely require that the Middle District request a new three-judge court be appointed to hear the transferred cases. It may be that the Middle District could request of the chief judge of the circuit to appoint the existing court, but that is fraught with its own problems in the law.[3] Creating this potential problem cannot be economical by any view.

It is also important to recognize that the decision to transfer will not cause this three-judge court to disband. This Court still has two claims before it, involving the constitutionality of the Alabama House and Senate districting plans. We three judges will still have to travel, still have to meet, and still have to share a bench to make decisions. This too discounts any of the majority opinion's reliance on "judicial economy."

The next two factors that the majority opinion puts the next-to-greatest amount of weight on is the convenience to the witnesses and the parties. In its words, the majority contends that "[t]he convenience of the parties and witnesses ... weighs strongly in favor of transfer." It elaborates in a footnote: "most of the relevant documents and databases likely are in the possession or control of the State of Alabama, and most of the witnesses likely are state of Alabama employees [and thus] the taxpayers of Alabama will be forced to bear the costs of transporting state witnesses and documents to the Southern District of Alabama." In its concern for the taxpayer, the majority opinion completely ignores two important considerations. First, the majority opinion appears oblivious to the fact that this court sits not only in Mobile, but also in Selma, Alabama, a mere 50 miles from Montgomery, where the Middle District sits. Second, the majority fails to recognize the limited role that witnesses will play in what this Court must do.

This case is already in the remedy phase by virtue of the parties' concessions and the undisputed fact that Alabama has not passed a U.S.-Congressional districting plan based on the 2000 census. There will be no trial, and no witnesses will be called, with respect to liability.[4] The only times

---

**3.** Section 2284(b)(1) does not vest any discretion in the chief judge of the circuit: it merely charges the chief judge with the responsibility of designating "two other judges, one of which shall be a circuit judge."

**4.** The defendants, in their motions to transfer,

when non-parties will be called before the Court are when experts may be called to present or defend districting plans. In all likelihood, these experts will be just as inconvenienced in Montgomery or Selma as in Mobile. The Court cannot say for sure, though, as thus far the parties have not discussed the effect of venue on their experts in the remedy phase. One thing remains clear: witnesses will play only a very limited role, if any role at all. Thus, witness convenience, the "most important factor," must be given its proper weight, and cannot, in contrast to the majority's estimation, be considered a heavyweight factor. *See Owens v. Blue Tee Corp.* 177 F.R.D. 673, 679 (M.D.Ala.1998).

Getting perhaps lighter on the scales, even in the majority's assessment, is convenience to the parties. However, this factor should not even find its way into the balance at all. As a sister court noted, the convenience to the parties is "practically irrelevant." *Central Money Mortg. Co. [IMC], Inc. v. Holman,* 122 F.Supp.2d 1345, 1346 (M.D.Fla.2000) (instead more weight given to the convenience to the witnesses and the fact that a parallel case had been first filed elsewhere). *See also Prather v. Raymond Constr. Co.,* 570 F.Supp. 278, 284 (N.D.Ga.1983) ("the fact that counsel may be inconvenienced is irrelevant to whether the motion for transfer should be granted").

This is especially the case here, where the majority opinion does nothing to show

how granting transfer for the Defendants' convenience is nothing more than inconvenience-shifting, putting out the Plaintiffs, who have filed in their home district. The Middle District has itself previously recognized that the transfer statute provides for "transfer to a more convenient forum, but not to one which is likely to prove equally convenient or inconvenient." *Johnston v. Foster–Wheeler Constrs., Inc.,* 158 F.R.D. 496, 503 (M.D.Ala.1994) *citing VanDusen v. Barrack,* 376 U.S. 612, 645–46, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). *See also Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir.1996) (upholding a decision not to transfer where "transferring the case ... would merely shift inconvenience from the defendants to the plaintiff"). Therefore, "'if a transfer of venue would merely shift inconvenience from one party to the other,' or the balance of all factors is but slightly in favor of the movant, the plaintiff's choice of venue should be given deference." *Folkes v. Haley,* 64 F.Supp.2d 1152, 1154 (M.D.Ala.1999), *quoting Johnston,* 158 F.R.D. at 503. This appears to be the case here: both sets of plaintiffs have filed in their home district. Why then should the Court burden them with travel merely to accommodate the Defendants? The majority opinion gives no answer.

The final consideration is one that the majority does not come right out and state, but it seems to factor into its decision. The majority, in what might be mistaken

do argue that transfer to the Middle District would be more convenient for the witnesses. *See Barnett* (Doc. 20, p. 3, para.4) ("transfer is warranted for the convenience of the ... witnesses.......the drafters of the proposed plans worked in Montgomery ... and the custodians of the documents and the demographic date [sic.] are in Montgomery. To the extent that State legislators may be witnesses, Montgomery is generally more centrally located than Mobile.") *and Montiel* (Doc. 28, p. 3, para.5) ("such a transfer would

serve the interests of the ... witnesses. The plans were drafted and debated in Montgomery, and the custodians of documents and demographic data are in Montgomery. Finally, key legislative players, including Senator Jeff Enfinger and Representative Ken Guin, find Montgomery to be more centrally located and convenient than Mobile.") However, the demographic data is freely available in paper and electronic form, and easily transmitted through the mail or through e-mail.

for a gratuitous footnote, surmises that the Plaintiffs used the "tactic" of naming probate judges from the Southern District of Alabama in order to establish venue. This footnote announces from the bottom of the page that such joinder was improper, and was ostensibly done simply to secure the Southern District as the venue. Since I also dissent from the majority's footnotes, I will address this contention.

First, it is important to realize that the Southern District of Alabama was a proper venue all along.[5] Contrary to the majority's view, the probate judges are proper parties, properly joined under Fed. R.Civ.P. 19(a) (2001), as they are the local administrators of the elections affected by this case. Though they may have no role in the state-government-conducted redistricting process, they will be integral in carrying out any court-ordered remedy. Like the Alabama Secretary of State, who also plays no role in the redistricting process, but who is the statewide administrator of elections, the probate judges will be directly affected by and will directly affect the remedial scheme this Court may impose. Neither the probate judges nor any other party has challenged their presence as defendants.

The majority opinion balances the four factors discussed above against the plaintiff's choice of forum, but its opinion improperly treats this last factor, which is ordinarily quite hefty, as a mere featherweight. Precedents abound declaring that the plaintiff's choice of forum is entitled to "significant weight." *See, e.g., U.S. v. $633,021.67 in U.S. Currency,* 842 F.Supp. 528, 535 (N.D.Ga.1993). *See also Ford Motor Co. v. Ryan,* 182 F.2d 329 (2d Cir. 1950), *cert. denied,* 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950) ("the plaintiff's privilege, conferred by statute, of choosing the forum he selected is a factor to be considered as against the 'convenience' of the witnesses or what otherwise might be the balance of 'convenience' as between 'the parties' "). This choice tips the scales even more when the plaintiff chooses his home forum, as the home-forum choice allays any suspicion the court might have of the plaintiff's forum shopping. *Woodworks, a Div. of MHJ Group, Inc. v. Tyler Machinery Co. Inc.,* 907 F.Supp. 1490, 1493 (M.D.Ala.1995), *citing In re Ricoh Corp.,* 870 F.2d 570 (11th Cir.1989) ("The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference"). *See also Owens,* 177 F.R.D. at 679 ("under normal circumstances, federal courts will accord great deference to the plaintiff's choice of forum if the forum is in the district where the plaintiff resides"). In fact, the plaintiff's forum choice is so weighty, that a court should honor the plaintiff's choice of forum "unless the defendant presents strong reasons for change of venue." *Patterson v. Western Auto Supply Co.,* 991 F.Supp. 1319, 1326 (M.D.Ala.1997), *citing Gulf Oil Co.,* 330 U.S. at 508, 67 S.Ct. 839 (1947). These strong reasons that the defendant must present must "clearly outweigh" the plaintiff's choice of forum, among other factors. *Robinson,* 74 F.3d at 260 (upholding a district court's decision not to transfer where the district court concluded that the transfer would merely shift inconveniences). Thus, the plaintiff's choice of forum will "rarely be disturbed." *Garay v. BRK Electronics,* 755 F.Supp. 1010, 1011 (M.D.Fla.1991) *citing Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339, 341 (8th Cir.1983).

Here, the plaintiffs in both cases have chosen the Southern District of Alabama, the district of their residence, in which to file suit. The Court should have properly assigned "significant weight" to their

---

**5.** Under 28 U.S.C. § 1391, this case is properly brought in the Southern District which is the residence of the defendant probate judges and the place of injury to the plaintiffs.

choice. *$633,021.67 in U.S. Currency*, 842 F.Supp. at 535. However, the majority opinion gives two reasons why this factor should be weakened.

First, the majority opinion states that the *Barnett* Plaintiffs consented to transfer. This is only partially true: the *Barnett* Plaintiffs only conditionally consented to transfer. They conditioned their consent on the Middle District's deciding the pending remand motion before transfer, and then, only consented if the Middle District found that it had jurisdiction over the *Douglas* case.

Second, the majority finds that Mr. Montiel's bringing his action as a class representative weakens his choice of forum. Indeed, in his complaint, Mr. Montiel brings his action on behalf of himself, and on behalf of "all other citizens of the State of Alabama similarly situated." The majority is taken with the belief that these ten words have the effect of slimming down Montiel's forum-choice to a puny factor. But, for two reasons, this belief has no such effect on Mr. Montiel's choice. First, the cases that the majority opinion cites for the proposition that a plaintiff's bringing his action as a class action are shareholder's derivative suits. In these cases, the potential class of plaintiffs was nationwide, and the pool of potential fora that these plaintiffs could go to contained hundreds of courts. Here, Montiel's claim envisions a class which is, at the most, statewide. Within Alabama, the number of federal fora that a plaintiff could turn to is three: the Northern, Middle, and Southern Districts. However, if this did not dissuade the majority, the second reason should have: Montiel's class only includes those Alabama citizens that were "similarly situated." Mr. Montiel is a resident in the Southern District. Mr. Montiel stands to be injured by the actions of the state officials in the Southern District, including the probate judges of the counties com-prising the Southern District. Thus, nobody outside the Southern District qualifies as a member of Montiel's class. So, while Montiel does bring his action on behalf of a class, the class is one contained only in the Southern District, and the majority's reasoning is inapposite. Thus, the full weight is due to the Plaintiffs' choice.

Because the majority opinion misconceived the requirements of the weigh-in conducted above, it came to the wrong conclusion with regard to transfer. When viewed with an eye to all the relevant considerations, the precedent cited above makes clear that the Plaintiffs' forum choice saddles the defendants with the burden of presenting "strong reasons" that clearly outweigh the plaintiffs' right to choose their forum. Here, the defendants in no way have met or carried this burden. The majority finds that (1) judicial economy, (2) convenience to the witnesses, (3) convenience to the parties and (4) the Plaintiffs' "tactics" outweigh the Plaintiffs' choice of forum. However, sizing them up in the light of the relevant considerations makes these reasons appear anemic at best and inapposite at worst. In either regard, they cannot "clearly outweigh" the plaintiff's choice of forum. *Giarmarco & Bill, P.C.*, 74 F.3d at 260. The majority simply got it wrong.

### The "First Filed" Rule

As discussed above, the venue factors do not support transfer. In addition, the majority opinion is able to declare that judicial economy compels consolidation of these cases because it mistreats and refuses to apply the "first filed" rule. Consolidation with *Douglas* is not a proper destination for these actions. The first filed rule makes clear that the three-judge court deciding *Douglas* has a duty to stay its proceedings and defer to this Court, home of the first-filed case.

I do not have to "assume[ ] without deciding that the 'first filed' rule applies," as

the majority opinion does: the rule clearly applies. And it is equally clear that none of the justifications for abandoning the rule and ignoring the Plaintiffs' forum choice is present: nobody's inconvenience in trying this case in Selma outweighs the Plaintiffs' choice of their home forum, and the Plaintiffs have not pulled any of the forum-shopping antics that *Clohessy* Court refers to as "special circumstances which justify giving the priority to the second action." *Allstate Ins. Co. v. Clohessy,* 9 F.Supp.2d 1314, 1316 (M.D.Fla.1998).

The "first filed" rule applies when parallel cases are filed in two different federal district courts. *See EEOC v. University of Pa.,* 850 F.2d 969, 971 (3rd Cir.1988), *aff'd,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). The beauty of the rule is its simplicity: when parties institute parallel litigation, the court initially having jurisdiction should hear the case. *Allstate Ins. Co. v. Clohessy,* 9 F.Supp.2d 1314, 1315–16 (M.D.Fla.1998) (holding that staying the proceedings via the first filed rule was not warranted because the party asking for its enforcement had not *filed* first in the parallel litigation, but had merely *served process* first in the parallel litigation, which had been filed second), *citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1174 (11th Cir.1982) (for the proposition that the Eleventh Circuit follows the first filed rule). The rule grows out of principles of federal comity, "which requires the federal district courts to refrain from interfering with each other's affairs in order to avoid duplication of judicial resources and conflicting decisions." *Id.* at 1316 (citations omitted). This mutual confidence calls a district court to stay an action that was first filed in another district court. *Government of the Virgin Islands v. Neadle,*

861 F.Supp. 1054, 1055 (M.D.Fla.1994), *citing, Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 182–84, 72 S.Ct. 219, 96 L.Ed. 200 (1952). Of course, the second-filed-in court can refuse to stay its proceedings if it concludes justice so requires, in rare or extraordinary circumstances. *University of Pa.,* 850 F.2d at 971, 976–77. Such circumstances might include the first-filed action being filed in an attempt to forum shop or for some other inequitable or bad-faith motive.[6] *Id.*

The majority acknowledges the straightforward little rule, but then casts a haze over it, saying that it "carries less weight in this matter than in a typical action involving parallel litigation because of the particular procedural posture of the cases." The smog continues to seep as the majority expounds: "arguments could be made either way as to which case should be viewed as the earlier action." This because, "Although both the *Barnett* and *Montiel* cases were filed in this district a few days before the *Douglas* case was filed in Montgomery, the three-judge court in Montgomery was the first convened." When it apparently gets too foggy, the majority opinion retreats to its old friend judicial economy, recapping its venue analysis.

But charging forward into the murk of arguments being made either way is what courts do. The Middle District of Florida in *Clohessy,* which the majority cites, passed through these very clouds and was careful not to confuse the point at which jurisdiction attached with a later procedural step. *Clohessy,* 9 F.Supp.2d at 1315–16 (*filing* was the point at which jurisdiction attached and not service of process). The *Barnett* and *Montiel* cases, as compared with the *Douglas* case, must be examined with the same careful eyes, beady in the

---

**6.** Despite the majority opinion innuendos, no evidence of such a bad faith or inequitable motive has been presented in this case.

haze of the potentially-confusing three-judge court statute to see just when jurisdiction attached. Fortunately, several other courts have penetrated this fog before, and have left a trail of precedents for us to follow.

What the majority fails to acknowledge in these precedents is that a district judge's convening a three-judge court is not the point at which a federal court obtains jurisdiction over a case. Instead, the district judge acting alone must first examine the case filed before his court to see if the court has jurisdiction. Once he is satisfied that the case is one that properly invokes federal-court jurisdiction, he must call for the chief judge of the appellate circuit to convene a three-judge court. It is the single-judge district court which establishes jurisdiction. The Supreme Court settled this nearly seventy years ago. *Ex parte Poresky*, 290 U.S. 30, 31–32, 54 S.Ct. 3, 78 L.Ed. 152 (1933), *rh'g denied, Ex parte Poresky*, 366 U.S. 922, 81 S.Ct. 1090, 6 L.Ed.2d 245 (1961) (where the Court denied a petitioner's motion for leave to file petition for writ of mandamus requiring a district judge to convene a three-judge court under the predecessor statute to 28 U.S.C. § 2281: the Court held that the three-judge-court statute goes into effect after the single-judge district court determines that there is federal-court jurisdiction). The Court reasoned:

[T]he provision requiring the presence of a court of three judges necessarily assumes that the District Court has jurisdiction. In the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented. "A substantial claim of unconstitutionality is necessary for the application of section 266." (Citations omitted). That provision does not require three judges to pass upon this initial question of jurisdiction.

The existence of a substantial question of constitutionality must be determined by the allegations of the bill of complaint. (Citations omitted). While it is appropriate that a single District Judge to whom application is made for an interlocutory injunction restraining the enforcement of a state statute should carefully scrutinize the bill of complaint to ascertain whether a substantial question is presented, to the end that the complainant should not be denied opportunity to be heard in the prescribed manner upon a question that is fairly open to debate, the District Judge clearly has authority to dismiss for the want of jurisdiction when the question lacks the necessary substance and no other ground of jurisdiction appears.

*Id.*[7]

Dutifully, the Eleventh Circuit's predecessor recognized this rule in § 2281 cases.

---

**7.** The Court herein refers to section 266 of the Judicial Code, which was then codified at 28 USCA § 380. *Poresky*, 290 U.S. at 31, 54 S.Ct. 3. Title 28 was revised and reorganized by Act June 25, 1948, c. 646, § 1, 62 Stat. 869. U.S.C.A. Tables 41 (1962). Upon this reorganization, § 380 became § 2281, the statute governing the role of the three-judge court. *Id.* at 42, 54 S.Ct. 3. Section 2281 "provided that an interlocutory or permanent injunction restraining the enforcement, operation or execution of a State statute on grounds of unconstitutionality should not be granted unless the application has been heard and determined by a three-judge district court." 28 U.S.C. § 2281 *repealed by* Pub.L. 94–381 (Aug. 12, 1976). This statutory mechanism proved to be burdensome for the courts, and in 1976, Congress repealed § 2281, replacing it with § 2284. *Hart and Weschler's The Federal Courts and the Federal System* 1212–13 (Richard H. Fallon, Daniel J. Meltzer, and David L. Shapiro eds., 1996). Section 2284, which governs the case before this Court, is a trimmed-down version of the old § 2281, no longer applying to all state statutory schemes which appear to violate the

*Mayhue's Super Liquor Store, Inc. v. Meiklejohn,* 426 F.2d 142, 145–46 (5th Cir. 1970), (where a Southern District of Florida three-judge court dismissed a case for lack of jurisdiction, as it did not raise a substantial federal question, such a dismissal was the functional equivalent of a single-judge district court's dismissing a case for lack of jurisdiction, and appeal was properly taken to the Court of Appeals for the Fifth Circuit rather than to the Supreme Court). Other appeals courts followed the same rule. *See Lion Mfg. Corp. v. Kennedy,* 330 F.2d 833, 840–41 (D.C.Cir.1964) (upholding a district court's denying a plaintiff's motion to convene a three-judge court and granting of the government's motion to dismiss for lack of a case or controversy appropriate for declaratory or injunctive relief). In *Lion Mfg.,* the court addressed the question of "whether it was proper for a single judge to dismiss the complaint without convening a three-judge court." *Id.* Echoing the *Poresky* Court in commenting on the need for asking this question and then answering it, the *Lion Mfg.* court stated:

> This inquiry needs to be made because 28 U.S.C. § 2284 does in terms place certain limitations upon a single judge, including the dismissal of complaints. However, as this court has recognized, Section 2284 is addressed to the manner in which a three-judge court must function once it has been convened. It assumes jurisdiction in the District Court over the controversy, and its provisions come into play only when that jurisdiction exists. It remains for the judge who is asked to convene a three-judge court to determine whether jurisdiction exists in the District Court; and, if he properly concludes there is no jurisdiction, his power to dismiss the complaint,

U.S. Constitution, but only to those state-statutory legislative districting schemes which al-

as well as to deny the motion to convene a three-judge tribunal, is in no way circumscribed by Section 2284.

*Id. See also Walker v. Gilligan,* 487 F.2d 508, 509–10 (6th Cir.1973) (upholding a district court's dismissal of a married couple's constitutional claim because it agreed that, under the Anti–Injunction Act, the court lacked jurisdiction as the plaintiffs had an adequate remedy under state law). The Sixth Circuit "conclude[d] that the District Court acted properly." *Id.* It explained:

> First, it is well settled that a single judge to whom application is made to convene a three-judge district court may dismiss the action if jurisdiction is lacking. (Citations omitted). Clearly 28 U.S.C. § 2284 is directed to the manner in which a three-judge district court must function once it has been convened and therefore its provisions are invoked only when jurisdiction exists.

*Id.*

An Indiana district court neatly laid out the procedure for convening a three judge court, and its description also makes clear that federal jurisdiction is a question for the single district judge:

> In a case properly to be heard by a three-judge court, the single judge must inquire into the jurisdictional facts necessary to found federal jurisdiction and those necessary to found the jurisdiction of the three-judge court. If three-judge court jurisdiction is properly found, all actions concerning the merits must thereafter be made by the three-judge court. *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

legedly violate federal law. *Id.* at 1213.

*Hopson v. Schilling,* 418 F.Supp. 1223, 1228 (N.D.Ind.1976) (the district court held that a welfare rights organization and indigent's request for declaratory relief was not equal to a request for an injunction barring enforcement of a state statute, which would require the court to convene a three-judge court).

The approach taken faithfully by the federal courts since *Poresky* was decided nearly seventy years ago, namely establishing jurisdiction and then invoking the three-judge-court mechanism, reveals that the three-judge-court mechanism is " 'not jurisdictional but procedural.' " *Smith v. United States Civil Serv. Comm'n,* 520 F.2d 731, 733 n. 1 (7th Cir.1975) (affirming a district court's dismissal of a claim for injunctive relief as lacking a substantial federal question, and holding, in a footnote, that the three-judge-court statute is not a basis for federal jurisdiction), *quoting Van Buskirk v. Wilkinson,* 216 F.2d 735 (9th Cir.1954).

The court in *Martinez v. Members of Judicial Standards Comm'n of State of N. M.,* 386 F.Supp. 169 (D.C.N.M.1974), came to the same conclusion. In *Martinez,* the court dismissed a state judge's plea, under § 2281, for the court to enjoin operation of the state's judge-removal scheme, because the judge had not exhausted his state-law remedies. *Id.* at 173. The court was forced to distinguish between federal subject-matter jurisdiction and the three-judge court statute because the plaintiff had failed to "identify the provisions of the Constitution and laws of the United States under which the cause arises," and instead had simply invoked the three-judge court statute as the basis for federal jurisdiction. *Id.* The *Martinez* Court distinguished the requirement for federal subject-matter jurisdiction, that "the complaint ... set forth a federal question," and the three-judge court statute, by noting that the statute is "procedural and do[es] not serve

to invoke the jurisdiction of the federal court." *Id.*

The *Martinez* Court's distinction puts the three-judge statute in its proper place: the statute reflects the judgment of Congress that the best way to handle these cases, procedurally speaking, is by an expedited system. *See Swift and Co. v. Wickham,* 382 U.S. 111, 124, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965) (stating, with respect to the three-judge-court-statute predecessor to § 2284, "[t]he purpose of the three-judge scheme was in major part to expedite important litigation"). This system combines the first two rungs on the federal judicial ladder, giving the parties the right to appeal straight to the top with just one step. *See* § 2284. This expedited procedure, though it looks different from the usual route through the judicial system, does not change the subject-matter-jurisdiction calculus: a court does not attain jurisdiction by following the proper procedures of convening a three-judge court, but it is the presence of a federal claim which gives the court jurisdiction. *Martinez,* 386 F.Supp. at 173. Thus, the time at which jurisdiction attaches is the same as in any federal-question case: it is the time in which the case was properly filed in federal court, if the required elements of jurisdiction were present then.

Thus, if a plaintiff presents a court with a redistricting matter alleging a violation of federal law, the court must have power over the case before it can even examine the case to see if a three-judge court is appropriate. The power that it must have is subject-matter jurisdiction. Without it, the court can do nothing to start its procedural gears turning, and it is the duty of the court to ask itself at the outset if it properly has this power. Once the power is established, once the court is assured of its jurisdiction, then it can move on to deciding how it will procedurally handle the case. The procedural mechanism that

Congress has ordained is found at 28 U.S.C. § 2284, the three-judge-court statute.

Since the time at which the three-judge court was convened is irrelevant for measuring when subject matter jurisdiction attached, this Court need only inquire into (1) which district had the first-filed case(s), and (2) whether the first-filed case(s) properly alleged federal jurisdiction at the time it was filed. As to the first inquiry, the cases in the Southern District were filed first: *Barnett,* 01–0434–BH–S, was filed June 15, 2001 and *Montiel,* 01–0447–BH–S, was filed June 21, 2001. *See* (Docs.1) (the file-stamped complaints in both files). *Douglas,* in the Middle District, was filed later, on July 5, 2001. *See Barnett* (Doc. 20, attachment 2) (file-stamped copy of the *Douglas* complaint). Since the Southern District cases were filed first, jurisdiction attached if jurisdiction was properly alleged at the time of the filing.

Because these causes of action were right, ripe, and redressible at the time they were filed, they are the first-filed. First, the cases were rightly brought in federal court: they raised a federal question, namely that the Alabama legislature's failure to redistrict violated the U.S. Constitution. Second, the cases were ripe when filed: the Alabama legislature had adjourned *sine die,* which meant that the legislature had adjourned "without assigning a day for a further meeting or hearing." *Blacks Law Dictionary* 1385 (6th ed.1997). At the time the suits were filed, as even now, it appeared the Alabama legislature had shirked its constitutional duty. And third, the causes were redressible when filed: the Voting Rights Act as well as Supreme Court and Eleventh Circuit precedent make it clear that this Court, as a federal court, could create a districting scheme if the appropriate Alabama bodies failed to do so. *See, e.g., Wesch v. Hunt,* 785 F.Supp. 1491 (S.D.Ala.

1992), *aff'd by Camp v. Wesch,* 504 U.S. 902, 112 S.Ct. 1926, 118 L.Ed.2d 535, (1992) *and Figures v. Hunt,* 507 U.S. 901, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993) (in which this Court convened a three-judge court and created a statewide Congressional districting scheme). For these reasons, jurisdiction was proper at the time these actions were filed. Therefore, in light of their being filed before the case in the Middle District, these are the first-filed cases.

According to precedent, this Court being the home of the first-filed action places a duty on the *Douglas* Court to stay its proceedings until this Court resolves the cases before it. While this Court cannot and would not attempt to enforce this rule upon the Middle District, the presence of the Middle District's duty makes it clear that it is an improper destination for these cases. In addition, the *Douglas* case's shaky jurisdictional foothold as well as a proper weighing and balancing of the venue-transfer factors proscribe transfer.

Because of these established legal principles, I must and do **DISSENT** from the majority's opinion.